257 S.E.2d 167 (1979)
STATE ex rel. Alan Gary DOWDY
v.
Dan C. ROBINSON, as Judge, etc.
No. 14421.
Supreme Court of Appeals of West Virginia.
June 5, 1979.
Dissenting Opinion August 3, 1979.
*168 Charles M. Kincaid, Huntington, for relator.
Chauncey H. Browning, Atty. Gen., Richard L. Gottlieb, Asst. Atty. Gen., Charleston, for respondent.
NEELY, Justice:
In this original proceeding, the petitioner, Alan Gary Dowdy, seeks to prohibit the respondent judge of the Circuit Court of Cabell County from trying him on the grounds of double jeopardy. On 13 July 1978 the petitioner was tried on Indictment No. 78-C-50 which provided:
. . . Alan Gary Dowdy on the ____ day of March 1978, in the said County of Cabell, did unlawfully feloniously break and enter a certain building not then and there being a dwelling or outhouse adjoining thereto or occupied therewith located at 220 22nd Street, Huntington, in Cabell County, West Virginia, and used as a night club, being the property of Bachelor's Bait, Inc., and with intent the goods and chattels of Bachelor's Bait, Inc., to take, steal and carry away, against the peace and dignity of the State.
The proof adduced at trial by the prosecution was that the building broken into was located at 200 22nd Street rather than at 220 22nd Street as provided in the indictment. The petitioner argued at the trial that this constituted a fatal variance between the indictment and the proof and moved for a directed verdict of acquittal. The court sustained the motion and, over the objection of the State, directed the jury to find petitioner not guilty by direction of the court. In December 1978 the petitioner was brought before the Circuit Court of Cabell County on Indictment No. 78-C-129 which provided:
. . . Alan Gary Dowdy on the ____ day of March, 1978, in the said County of Cabell, did unlawfully and feloniously break and enter a certain building not then and there a dwelling house or outhouse adjoining thereto or occupied therewith located at 200 22nd Street, Huntington, in Cabell County, West Virginia and used as a night club, being the property of Bachelor's Bait, Inc. and with intent the goods and chattels of Bachelor's Bait, Inc., to take, steal and carry away, against the peace and dignity of the State.
The only difference in the charges in the first indictment and the charges in the second indictment is the street address; therefore, petitioner contends that he is being tried a second time for the same offense in contravention of the double jeopardy provisions of U.S.Const. Amend. V and W.Va. Const., art. 3, § 5. We agree.

I
During the last two years the United States Supreme Court has addressed the troublesome area of double jeopardy in numerous cases.[1] While that Court may be *169 divided ideologically on the primary purpose of the double jeopardy clause, one clear rule has emerged: after a judgment acquitting a defendant no retrial on the same offense is permissible no matter how erroneous the acquittal might have been. Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). As the Court in Sanabria said:
In deciding whether a second trial is permissible . . ., we must immediately confront the fact that petitioner was acquitted on the indictment. That "`[a] verdict of acquittal . . . [may] not be reviewed . . . without putting [the defendant] twice in jeopardy, and thereby violating the Constitution,' " has recently been described as "the most fundamental rule in the history of double jeopardy jurisprudence." [Citations omitted] The fundamental nature of this rule is manifested by its explicit extension to situations where an acquittal is "based upon an egregiously erroneous foundation." [Citations omitted] 437 U.S. at 64, 98 S.Ct. at 2178.
Therefore, given that the petitioner was acquitted of the charges in Indictment No. 78-C-50, the central issue in the case before us is whether Indictment No. 78-C-50 and Indictment No. 78-C-129 charge the same offense.
In the case before us, the trial judge probably erred in the first trial by directing a verdict of acquittal. He could have struck the street number in the original indictment as surplusage on the grounds that the remainder of the indictment fully informed the defendant of the charges against him, or he might have granted a mistrial for manifest necessity. Both of these techniques would probably have survived any disapproval by the United States Supreme Court or this Court. See State v. McGraw, 140 W.Va. 547, 85 S.E.2d 849 (1955) (surplusage); Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) (mistrial).
Until 1977, the scope of the double jeopardy protection against multiple prosecutions for the "same offense" was unclear. In 1932, the United States Supreme Court adopted the "same evidence" test for defining the fifth amendment phrase "same offense" when applied to multiple counts in one trial, holding that:
[T]he applicable rule is that, where the same act or transaction constitutes a violation of the two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.. . . Blockburger v. United States, 284 U.S. 299 at 304, 52 S.Ct. 180 at 182, 76 L.Ed. 306 (1932).
Despite uncertainty whether the Court meant the "same evidence" test of Blockburger to apply to multiple prosecutions as well as to multiple counts, the lower courts assumed that it did[2] and that assumption was validated in Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), when the Court adopted Blockburger's rather technical test.[3] In Brown, the defendant *170 had been convicted of joyriding in a 1965 Chevrolet and was subsequently convicted of stealing the same car. The Court held that the crimes of joyriding and auto theft, as defined by the state, were the "same offense" for double jeopardy purposes because the latter required proof of all the elements of the former. If each crime contains an element which the others do not, even a substantial identity of proof will not prohibit multiple trials under double jeopardy. The United States Supreme Court in Brown noted that while joyriding and auto theft were one offense under Ohio law, they "would have a different case if the Ohio legislature had provided that joyriding is a separate offense for each day in which a motor vehicle is operated without the owner's consent." 432 U.S. at 169 n. 8, 97 S.Ct. at 2227. Justice Brennan, recognizing the potential dangers of a technical "same evidence" test concurred in Brown and urged adoption of a "same transaction" test which would categorize offenses as the "same offense" if they "`grow out of [a] single criminal act, occurrence, episode, or transaction.'" 432 U.S. at 170, 97 S.Ct. at 2227 quoting from Ashe v. Swenson, 397 U.S. 436 at 453, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring).
The "same transaction" test can be explained better by illustration than by definition: if a defendant were arrested for both kidnapping and robbing a victim at the same time then, under the "same transaction" test, the two offenses would be the "same offense" for double jeopardy purposes; if the State elected to try the defendant for kidnapping alone, a later trial on the robbery charge would be barred. Of course, under Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), the defendant who on his request is granted separate trials on offenses arising from the same transaction is estopped from asserting double jeopardy.
What the "same transaction" test will not do is mandate one prosecution for crimes growing out of different occurrences even though closely associated in time. For example, if a person were to murder one man in Fairmont at 6:00 p.m. and, unrelated to the first murder, murder another man in Mannington at 6:30 p.m., separate prosecutions would be permissible because two distinct occurrences were involved. If a person were to murder two people at the same time a closer case would be presented, and whether it were double jeopardy to have separate prosecutions would depend upon the nature of the evidence presented. For example, if the defense were self-defense on the grounds that the two victims had attacked the defendant, then it would seem unfair to try the defendant twice for essentially the same transaction, but we leave that question to a future day.
The policy behind the prohibition against double jeopardy is probably best stated in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957):
The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. 335 U.S. at 187, 78 S.Ct. at 223.
In view of this strong policy we hereby adopt both the "same evidence" test and the "same transaction" test for determining whether the "same offense" is involved for double jeopardy purposes with an accompanying rule that whichever test affords the defendant the greater protection against potential unconstitutional double jeopardy must be applied. We do not disparage the Supreme Court's wisdom in adopting the "same evidence" test alone; however, we are clearly free to adopt broader protections under our state constitution than those provided by its federal counterpart. See State ex rel. Whitman v. Fox, W.Va., 236 S.E.2d 565 (1977).
In the case before us, it is clear that the charges in Indictment No. 78-C-50 and *171 the charges in Indictment No. 78-C-129 grow out of a "single criminal act, occurrence, episode, or transaction." The only cited transgression of the petitioner was the unlawful breaking and entering of a building on 22nd Street in Huntington owned by Bachelor's Bait, Inc. and used as a night club. Clearly, under the "same transaction" test, the same offense is charged in both indictments and a trial on Indictment No. 78-C-129 is clearly an abuse of legitimate powers.

II
The petitioner challenges the constitutionality of W.Va.Code, 61-11-14 [1923] which provides:
A person acquitted of an offense, on the ground of a variance between the allegations and the proof of the indictment or other accusation, or upon an exception to the form or substance thereof, may be arraigned again upon a new indictment or other proper accusation, and tried and convicted for the same offense, notwithstanding such former acquittal[,]
This statute allows multiple prosecutions of the same defendant for the same offense and expressly provides for a second prosecution after an acquittal in violation of U.S. Const. Amend. V and W.Va.Const., art. 3, § 5 and, therefore, is unconstitutional. As we said earlier, different action by the trial judge, e. g. striking the street number from the indictment or granting a mistrial for manifest necessity, might have avoided a successful plea of double jeopardy in the second trial. Law, however, is a technical creature and the Supreme Court has accorded magic to a directed verdict of acquittal which we cannot escape.
For the reasons stated above this writ of prohibition prayed for is awarded.
Writ awarded.
MILLER, Justice, dissenting:
I dissent, as I believe the majority has completely misconceived the limited double jeopardy issue presented to us and has compounded their error by engaging in an extensive and useless dictum in regard to the appropriate standard under double jeopardy principles to test whether two or more crimes are the same.
It is obvious from the facts that the directed verdict was granted when the defendant moved the court that there was a fatal variance between the address of the building described in the indictment and the address proved at trial. The indictment charged the defendant with breaking and entering a building "located at 220 22nd Street, Huntington, in Cabell County, West Virginia, and used as a night club, being the property of Bachelors Bait, Inc. . . ." The variance at trial was that the street address was proved to be 200 22nd Street.
The building was described in the indictment by its location on a given street in the city of Huntington, by the owner's name and by the function of the building. Therefore, the fact that the street address was misnumbered could not constitute a fatal defect. Both State v. Paris, 155 W.Va. 268, 184 S.E.2d 1 (1971), and State v. Stone, 127 W.Va. 429, 33 S.E.2d 144 (1945), stand for the principle that if a building is described with sufficient certainty to apprise the defendant of its location, an indictment cannot be successfully challenged. Moreover, if a building is sufficiently described without the street address, the street address is mere surplusage. State v. Paris, supra.
Rather than confine its opinion to the limited issue of whether this type of mid-trial termination affords a double jeopardy bar to a new trial, the majority launches into a discussion of whether the same transaction or same evidence test should apply. The record is clear that both indictments charged the same crime. Consequently, the majority opinion in this area is pure dictum.
The double jeopardy bar against successive trials has never been held to be absolute. While Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), binds the states to the federal standard that the "time" for the attachment of jeopardy is when the jury is impaneled and sworn, this does not mean that any break in the trial after that time permits a successful double jeopardy plea on any attempted retrial.
*172 An exhaustive historical analysis of this issue is not necessary in order to demonstrate the majority's error. The United States Supreme Court has recognized that double jeopardy does not preclude a retrial where a mistrial is directed by the judge because the jury is unable to agree on a verdict. United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).
The Supreme Court has also recognized that there may be other occasions where there is a "manifest necessity" to declare a mistrial, and in such event double jeopardy does not bar another trial. Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). We have followed this principle in State ex rel. Dandy v. Thompson, 148 W.Va. 263, 134 S.E.2d 730 (1964), cert. denied, 379 U.S. 819, 85 S.Ct. 39, 13 L.Ed.2d 30.
Double jeopardy does not bar a retrial where the defendant has requested and obtained a mistrial on grounds other than prosecutorial or judicial overreaching. United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). The same is true where an indictment is dismissed upon motion of the defendant under circumstances which are analogous to a mistrial. Lee v. United States, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977).
Of particular importance is the rule that the trial court's labeling of the motion which terminates the trial will not be controlling, but rather an examination will be made of the underlying record to determine the substantive nature of the court's ruling. United States v. Martin Linen Supply Co., 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977).
The pivotal case, which perhaps best expresses the current views of the United States Supreme Court, is United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). In Scott, the defendant moved prior to and at the trial for dismissal of two narcotics counts on the ground that his defense had been prejudiced by pre-indictment delay. At the close of the evidence, the district court granted the motion. The government appealed the dismissal of the two counts under 18 U.S.C. § 3731, which permits appeals by the government from the dismissal of indictments except where the Double Jeopardy Clause prohibits retrial.[1]
Writing for the majority, Justice Rehnquist held that jeopardy did not bar a new trial, stating:
"Rather, a defendant is acquitted only when `the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.' Martin Linen, supra, 430 U.S. at 571, 97 S.Ct. [1349] at 1355 [51 L.Ed.2d 642]. . . ." [437 U.S. at 97, 98 S.Ct. at 2196-97, 57 L.Ed.2d at 78]
The dissenting Justices, led by Justice Brennan, took a broader view, and concluded that where the trial court resolves any factual issue which is dispositive of the defendant's culpability, then double jeopardy bars the retrial. This would include favorable rulings by the trial court on the defendant's defenses, e. g., "entrapment, insanity, right to speedy trial, statute of limitations . .." [437 U.S. at 111, 98 S.Ct. at 2204, 57 L.Ed.2d at 87]:
"A critical feature of today's holding appears to be the Court's definition of acquittal as `a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged,' ante, at 97, [98 S.Ct. 2187, 57 L.Ed.2d 78,] quoting United States v. Martin Linen Supply Co., supra, 430 U.S. at 571, 97 S.Ct. [1349] at 1354 [51 L.Ed.2d 642]. But this definition, which is narrower than the traditional one, enjoys no significant support in our prior decisions. The language quoted from Martin Linen *173 Supply Co. was tied to the particular issue in that case and was never intended to serve as an all  encompassing definition of acquittal for all purposes. Rather, Martin Linen Supply referred generally to `acquittal' as `a legal determination on the basis of facts adduced at the trial relating to the general issue of the case,' id., at 575, 97 S.Ct. [1349] at 1357 [51 L.Ed.2d 642] (citations omitted), and this is the accepted definition. See Serfass v. United States, 420 U.S. 377, 393, 95 S.Ct. 1055, 1065, 43 L.Ed.2d 265 (1975), quoting United States v. Sisson, supra, 399 U.S. [267] at 290 n. 19, 90 S.Ct. [2117] at 2130 [26 L.Ed.2d 608]. This definition, moreover, clearly encompasses rulings pertaining to all `affirmative defenses' that depend on the factual development at trial." [437 U.S., at 111-12, 98 S.Ct. at 2204, 57 L.Ed.2d at 87]
The majority opinion in Scott conceived that the pre-indictment delay was a defense and that the district court's factual resolution of it in favor of the defendant did not bar a new trial because the delay, however prejudicial, was not an element of the prosecution's case. The dissent maintained, on the other hand, that this defense related to the defendant's ultimate culpability, and that since the district court had resolved the issue in the defendant's favor, double jeopardy precluded a retrial.
In the present case, it is not necessary to select which of the two views expressed in Scott we need accept, since under both views the result is that jeopardy would not bar a retrial. Here, the factual issue  the variance between 220 22nd Street and 200 22nd Street  forms no part of an essential factual element of the State's case, nor was it in any manner related to an essential factual element of an affirmative defense of the defendant. It was pure surplusage, much as if the indictment had included an erroneous physical description of the defendant.
Here, the majority states in regard to this area of double jeopardy that:
"[O]ne clear rule has emerged: after a judgment acquitting a defendant no retrial on the same offense is permissible no matter how erroneous the acquittal might have been. Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978).. . ." [Majority Opinion at 169]
But Scott does not stand for this proposition, nor does Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), which involved a federal bench trial on a single-count gambling indictment. An essential element of the federal crime was a violation of a state statute governing numbers and horse betting. At the conclusion of the government's case, the defendant moved for an acquittal on the ground that the government had failed to prove a violation of the state statute. The trial court granted the motion and the government appealed the dismissal. The Court concluded that the government had failed to prove the defendant guilty of an essential element of the offense charged, a violation of the state gambling statute:
"We have recently defined an acquittal as `a resolution, correct or not, of some or all of the factual elements of the offense charged.' Lee v. United States, supra, 432 U.S., at 30 n. 8, 97 S.Ct. [2141] at 2146, [53 L.Ed.2d 80,] quoting United States v. Martin Linen Supply Co., supra, 430 U.S., at 571, 97 S.Ct. [1349] at 1355, [51 L.Ed.2d 642]. Petitioner was found not guilty for a failure of proof on a key `factual element of the offense charged': that he was `connected with' the illegal gambling business. . . ." [437 U.S. at 71, 98 S.Ct. at 2182, 57 L.Ed.2d at 58-59]
Here, there was no finding of a failure of proof of an essential element of the offense charged. As the majority notes, Sanabria also stands for the proposition that if the acquittal on a key factual element is erroneous, jeopardy will still bar retrial, but that proposition is inapplicable to the present case, where the erroneous dismissal was based on a non-essential fact involved in the State's case.
*174 The majority errs in assuming that a judgment of acquittal granted by the court upon motion of the defendant will automatically bar a retrial. The bar comes into play only if the judgment of acquittal is based on the trial court's determination that the government has failed in its proof of an essential element of the offense.
A companion case to Sanabria and Scott is Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), which demonstrates how the jeopardy rule works in the jury trial where it is determined on appeal that the government has failed to fulfill its burden of proof on a key factual issue. At the trial, Burks claimed insanity and offered evidence on this issue. On appeal of his conviction, he contended the government had failed to prove his sanity beyond a reasonable doubt. The appeals court agreed, and reversed for a new trial, but the United States Supreme Court held that a judgment of acquittal had to be entered:
"[W]hen a defendant's conviction has been overturned due to a failure of proof at trial . . . the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been submitted to the jury. Since we necessarily afford absolute finality to a jury's verdict of acquittal  no matter how erroneous its decision  it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty." [Emphasis in original] [437 U.S. at 16, 98 S.Ct. at 2149-50, 57 L.Ed.2d at 12-13][2]
The failure of the majority to look behind the label of the motion for acquittal to determine the underlying nature of the motion is its first error. This error becomes compounded when the majority misreads the requirement of Scott and Sanabria that the acquittal must be based on the resolution in the defendant's favor of a factual element of the offense charged. Here, the difference in street address was not a factual element of the offense charged.
These errors by the majority result in its declaring W.Va.Code, 61-11-14, unconstitutional  a needless declaration in view of the factual issue in this case. Obviously, this statute will withstand double jeopardy scrutiny where the variance between the allegations in the indictment and the proof at trial relates to a factual matter that is *175 unrelated to an element of the offense charged.
Finally, having entirely misconceived the limited jeopardy question presented, the majority launches into a completely gratuitous attempt to settle the scope of double jeopardy as it applies to related offenses. This discussion is clearly unwarranted under the facts of this case, since both indictments were for the same offense. I decline comment in this area, since this case does not present this question.
In my judgment, the majority view will not stand the test of time. I would refuse the writ of prohibition, since double jeopardy does not bar a retrial where the trial court makes a factual finding in favor of the defendant on an issue that is unrelated to an element of the crime or of his defense.
NOTES
[1] See e. g. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); Lee v. United States, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); Arizona v. Washington, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978).
[2] See, e. g. Percy v. South Dakota, 443 F.2d 1232 (8th Cir. 1971); United States v. Wilder, 150 U.S.App.D.C. 172, 463 F.2d 1263 (1972); United States v. Hairrell, 521 F.2d 1264 (6th Cir. 1975); State v. Miller, 5 Or.App. 501, 484 P.2d 1132 (1971); Grubb v. State, 497 P.2d 1305 (Okl.Crim.App.1972).
[3] In Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), the Supreme Court elaborated on the Brown rule that a greater and lesser included offense are the same offense for double jeopardy purposes by noting that three exceptions would apply. A defendant loses his double jeopardy protection against separate prosecutions for greater and lesser offenses when: (1) the events necessary to the greater crime have not occurred at the time of the prosecution for the lesser is begun; (2) the facts necessary to the greater crime were not discovered, despite the exercise of due diligence, before the first trial; and (3) the defendant requests separate trials or in opposing trial fails to raise the lesser included issue.
[1] The relevant portion of 18 U.S.C. § 3731 provides:

"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."
[2] In Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the Court abandoned the concept that a defendant, by moving for a new trial or taking an appeal, "waives his right to a judgment of acquittal." [437 U.S. at 17-18, 98 S.Ct. at 2150, 57 L.Ed.2d at 13-14.] By holding that a successful claim of evidentiary insufficiency will bar a retrial, the Court modified its early position in Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950), that where the accused is successful on appeal in obtaining a new trial, double jeopardy does not bar the same. With the erosion of the "waiver" concept in Burks, it may be hoped that the Court will move away from similar labels that tend to obscure the functional basis of the double jeopardy principles, such as protecting the defendant from "embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity. . .." [Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957)], and protecting his "valued right to have his trial completed by a particular tribunal." [Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949)]. These are subjective considerations which have little bearing on the substantive rules relating to double jeopardy. Once it is recognized that certain mid-trial rulings terminating the case will not bar retrial and that a successful appeal on trial error also permits retrial, it can hardly be argued that the avoidance of the "ordeal of a second trial" and the assurance of the "valued right to the same tribunal" are meaningful principles. Burks and Scott now confine double jeopardy to two major categories. If the trial is broken for reasons related to a factual issue bearing on the defendant's guilt resolved in his favor, retrial is barred. If the conviction is reversed on appeal for evidentiary insufficiency rather than for trial error, a retrial is impermissible. Obviously, the term "evidentiary insufficiency" on appeal is a shorthand expression meaning that the trial judge resolved a factual issue bearing on the defendant's guilt in his favor by dismissing the case.