380 S.E.2d 223

**STATE of West Virginia**

v.

**Robert Franklin PARSONS.**

No. 18305.

Supreme Court of Appeals of West Virginia.

April 21, 1989.

---

S. Clark Woodroe, Charleston, for Robert Franklin Parsons.

Irene C. Berger, Dina M. Mohler, Asst. Pros. Attys., Charleston, for State.

**PER CURIAM:**

The defendant, Robert Franklin Parsons, appeals from his convictions in Kanawha County Circuit Court for first degree murder, sexual assault of a spouse, and obtaining and attempting to obtain money by false pretenses. Principally, he asserts that the evidence was insufficient to support the convictions. He also assigns evidentiary and instructional errors. We affirm.

### I.

On September 6, 1986, the defendant's wife, Rebecca Ann Parsons, was brutally murdered and sexually assaulted. Her body was discovered by deputy sheriffs the next day in a closet in the trailer where she and the defendant lived. The defendant was arrested on September 10, 1986.

We may briefly summarize the State's evidence. On September 5, 1986, the deceased participated as a bridesmaid in her

brother's wedding. When the wedding ended, she made plans to attend a party. She felt that the defendant might need her car and drove to the Parsons trailer with a friend, Teresa Quigley. On their arrival, the defendant drove the two women to Ms. Quigley's home and departed.

The deceased and Ms. Quigley returned from the party at around midnight. Soon after, the defendant arrived at the Quigley home in the deceased's car and demanded that she leave. When the deceased refused, he "peel[ed] out" of the driveway. The defendant returned two other times and made the same demand. On each occasion, the deceased declined to leave. Later, when the defendant encountered the deceased's brother, Earl Oldham, he told Mr. Oldham angrily to "get [his] goddamn sister" and "have her get her ass back over [here]."

The defendant returned to the Quigley home at 6:30 a.m. He knocked repeatedly on the door and on the outside of the home, and shouted loudly for the deceased. He also sprayed water into the window of one of the bedrooms. The deceased remarked to Ms. Quigley that the defendant "wouldn't go away" unless she left with him. The two departed in the deceased's car and traveled toward their trailer. The deceased was not seen alive again.

Only a few minutes later, at 6:45 a.m., a neighbor heard a woman scream and the sound of running footsteps inside of the Parsons trailer. A woman cried out in a frightened voice: "Leave me alone!" An argument followed. The neighbor observed the deceased's car in the driveway to the trailer.

At 9:15 a.m., the defendant went to the home of the deceased's parents, the Oldhams, and inquired if they knew where the deceased was. The defendant also made inquiry of Ms. Quigley, and vehemently denied that he picked up the deceased earlier that day. The Oldhams searched for the deceased into the next day. They eventually confronted the defendant and stated that they intended to notify the police of the deceased's disappearance. The defendant

telephoned Oldhams at 3:00 p.m. on September 7, 1986, and said: "You have full responsibility of [the defendant's son]. Tell him I love him, and I got to go[.]" He immediately hung up.

Only one hour after the defendant's call, the deceased was found partially clothed in a closet in the Parsons trailer. There were bruises and lacerations on her neck and face. Also evident on further inspection of the body were tears in, and a marked dilation of, the anus. Various blood-stained clothes were found in the bedroom and in adjoining rooms. A shirt worn by the defendant on the night of the wedding bore blood and saliva consistent with that of the deceased.

The defendant telephoned the Oldhams again at 10:00 p.m. on September 9, 1986, and claimed to be in Myrtle Beach, South Carolina. Another call was made to the Oldhams early on September 10, 1986. The defendant was arrested in Kanawha County within one hour of the second call.

Irvin Sopher, the medical examiner for the State, opined that the deceased's cause of death was manual strangulation. He also stated that the condition of the anus was consistent with repeated, forcible intrusion either by a penis or by some foreign object. It was his conclusion that the sexual assault was contemporaneous with the time of death.

In addition to murder and sexual assault, the defendant was also indicted for obtaining money by false pretenses and for two attempts to obtain money by false pretenses. These misdemeanors related to the unauthorized use of the deceased's automated teller card. Computer printouts from Magnet Bank disclosed automated teller transactions on the deceased's account at 8:59 a.m. on September 6, 1986. These transactions included a balance inquiry, an attempted withdrawal of $200, and a completed withdrawal of $125. The felonies and misdemeanors were jointly tried.

The defendant presented an alibi defense. In his testimony, the defendant admitted that he drove to the Quigley home to pick up the deceased and that he was

upset when she refused to leave. He testified that he returned to the trailer at 4:15 or 4:30 a.m. and slept until 8:15 or 8:30 a.m. When he awoke, he spent the balance of the day in a futile search for his wife. He also denied use of the deceased's automated teller card.

## II.

■ The defendant's primary contention is that the State's evidence was insufficient to support the felony and misdemeanor convictions. We stated the rule for appellate review of a guilty verdict in Syllabus Point 1 of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978):

> "In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

■ In his brief, the defendant points to the fact that the evidence in this case was wholly circumstantial. We are referred to cases that state the principle that circumstantial evidence must be viewed with caution. Furthermore, as the defendant notes, circumstantial evidence will support a guilty verdict only where it excludes every reasonable hypothesis of innocence. This rule is set out in Syllabus Point 2 of *State v. Phillips,* 176 W.Va. 244, 342 S.E.2d 210 (1986):

> " 'Circumstantial evidence will not support a guilty verdict, unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence; and circumstances which create only a suspicion of guilt but do not prove the actual commission of the crime charged, are not sufficient to sustain a conviction.' Syl.

pt. 2, *State v. Dobbs,* 163 W.Va. 630, 259 S.E.2d 829 (1979)."

### A.

■ We consider first the murder and sexual assault convictions, and find that the evidence is sufficient under *Starkey* and *Phillips.* There was substantial evidence of motive. The defendant admitted that he was upset by the deceased's refusal to return home on the night of the wedding. The State also proved that the defendant made repeated trips in an attempt to pick up the deceased, and that he became increasingly boisterous and violent.

Ample evidence of means and opportunity was also offered. The medical examiner for the State concluded that the time of death was between 6:30 a.m. and 8:00 a.m. Testimony by other witnesses showed that the defendant picked up the deceased at the Quigley home at 6:30 a.m. He drove the deceased's car. Within minutes, a neighbor heard sounds of struggle and a woman's frightened voice from inside of the Parsons trailer. The deceased's car was seen parked in the driveway. The defendant's presence at the time is further confirmed by blood and saliva found on the defendant's shirt. We thus conclude that the evidence, though circumstantial, was sufficient to support the convictions.

### B.

■ The defendant also claims that his convictions for obtaining money by false pretenses, and for attempt, were not supported by the evidence. We disagree. The defendant's own testimony places him at the Parsons trailer in the early morning hours of September 6, 1986. This is corroborated by other witnesses. The deceased's purse was found hidden under a mattress in the trailer. Computer records disclose that the automated teller transactions occurred approximately two hours after the deceased's death and only twenty minutes before the defendant arrived at the Oldhams. Moreover, only the defendant was likely to be aware of the personal identification number necessary for use of

the deceased's automated teller card. We find this evidence to be sufficient.[1]

### III.

The defendant also complains of the admission of certain $3'' \times 5''$ color photographs of the deceased. State's Exhibit No. 12 was a frontal view of the deceased's head and torso. State's Exhibit No. 46 was a close-up view of the strangulation injuries to the deceased's neck and mouth. State's Exhibit No. 47 depicted the torn and markedly dilated condition of the anus. The final photograph, State's Exhibit No. 50, was an overhead view of the forehead, eyes, and nose. The lower eyelid of each eye was pulled down to display areas of blood spotting or "petechiae,"[2] a condition consistent with strangulation.

The defendant asserts that these photographs should have been excluded under Syllabus Point 1 of *State v. Rowe*, 163 W.Va. 593, 259 S.E.2d 26 (1979):

"Gruesome photographs are not *per se* inadmissible, but they must have something more than probative value, because by the preliminary finding that they are gruesome, they are presumed to have a prejudicial and inflammatory effect on a jury against a defendant. The State must show that they are of essential evidentiary value to its case."

To be excludable under *Rowe*, it is necessary that there first be a finding that the photographs are "gruesome." As we explained in Syllabus Point 6 of *State v. Buck*, 170 W.Va. 428, 294 S.E.2d 281 (1982):

"In order for photographs to come within our gruesome photograph rule established in *State v. Rowe*, [163] W.Va. [593], 259 S.E.2d 26 (1979), there must be an initial finding that they are gruesome."

While our cases have not attempted to define what is and is not gruesome, they

do state that the focal inquiry is whether the photographs "may unduly prejudice or inflame a jury." *Rowe*, 163 W.Va. at 595, 259 S.E.2d at 28. We have, therefore, cautioned against the admission of photographs that depict autopsies, facial and bodily contortions, excessive blood, and the more revolting aspects of a corpse. *See, e.g., State v. Saunders*, 166 W.Va. 500, 275 S.E.2d 920 (1981) (facial contortions and severely burnt body); *State v. Clawson*, 165 W.Va. 588, 270 S.E.2d 659 (1980) (decapitated and partially decomposed bodies).

We have carefully reviewed the photographs objected to by the defendant and find that they were not gruesome. State's Exhibit Nos. 12 and 46 were admitted to show the extent of upper body injuries. They depict very little blood and the body was not unnaturally positioned or contorted. State's Exhibit No. 47 showed the injuries to the anus and some smeared blood on the buttocks. These features were neither revolting nor unduly emphasized. Finally, the petechiae depicted in State's Exhibit No. 50 were almost imperceptible. Furthermore, contrary to the defendant's assertions, we do not find that the lowered eyelids render that photograph gruesome.

### IV.

Objection is also made to the admission of the clothes and personal effects recovered by deputies from the Parsons trailer. These included a purse and a pearl necklace that were in the possession of the deceased on the night of the wedding. Also admitted were a shirt, bed sheet, towel, and underwear, all stained with blood.

While the precise nature of the defendant's objection is unclear from the record, his argument appears to center on relevance. Rule 401 of the Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of

1. We note that the defendant was sentenced to imprisonment for one year for each of the misdemeanors, to run concurrently with the life sentence for first degree murder. This avoids any potential double jeopardy problem that might have arisen if the defendant had received consecutive sentences. *Cf. Whalen v. United*

*States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

2. Stedman's Medical Dictionary 1062 (5th ed. 1982) defines "petechiae" as "[m]inute hemorrhagic spots, of pinpoint to pinhead size, in the skin."

any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We find, in view of this definition, that the evidence is clearly relevant.

The deceased's purse and necklace were secreted under the mattress in the bedroom where her body was eventually found. It was the State's theory of the case that the defendant hid these personal effects in an attempt to convince others that the deceased was still alive. "[W]hy," queried the State, "would a stranger hide her purse and her pearls beneath the mattress?" These items were thus clearly relevant to establish the identity of the perpetrator.

We also find that the blood-stained clothes were relevant. Blood found on the shirt and bed sheet was consistent with the deceased's. The shirt was identified as that worn by the defendant on the night of the wedding and, therefore, directly implicated him. The bed sheet was recovered from the room where the deceased's body was discovered. The other items, the towel and underwear, were recovered from adjoining rooms in the trailer. Blood found on these items was consistent with the defendant's. Each of these items, found in

close proximity to the body, also tended to prove that the defendant—and not some third party—committed the crimes.

The general rule for admitting such exhibits is found in *State v. Henry*, 51 W.Va. 283, 295, 41 S.E. 439, 444 (1902): "So all instruments by which an offense is alleged to have been committed; all clothes of parties concerned, from which inferences may be drawn; all materials in any way part of the *res gestae*, may be produced at the trial of the case." *See also State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986); *State v. Gum*, 172 W.Va. 534, 309 S.E.2d 32 (1983).

## V.

Earl Oldham stated in direct testimony that the deceased and the defendant argued when the defendant first arrived at the Quigley home. The defendant attempted to impeach Mr. Oldham with a statement he made to a deputy sheriff two days after the discovery of the body which suggested they were not arguing. The defendant claims that the court sustained the State's objection to his impeachment questions and assigns this as error, but this is not borne out in the record.[3] We, there-

---

3. The pertinent portion of the record in this regard states:

"Q (BY MR. MARTIN) Do you recall [the deputy] asking you that question about them being inside or outside the trailer; correct?
"A Yes.
"Q And do you recall telling him that they were outside and that they were not arguing?
"A I told him that they were outside, and I said I couldn't, you know, I heard them, you know, talking real loud, screaming and stuff, couldn't hear what they were saying. When I had made it back to the trailer, to Teresa Quigley's trailer, you know, I asked Becky what Bob had said. She said, you know, that he wanted her to go home. She said she wasn't ready to go home right yet.
"Q Do you remember telling Deputy Johnson that they really wasn't arguing, he just asked her to come on home, and she told him she would be over there later? Do you remember saying that?
"A I said that—
"Q (Interposing) Do you remember saying what I asked you there?
"A No.
"Q So if that's what the statement says, then that statement is incorrect?
"MISS BERGER: Objection, your Honor.

"THE COURT: State your grounds.
"MISS BERGER: I don't think the question is very clear. When Mr. Martin asked the witness 'If that's what the statement says, is it incorrect?', does he mean it's incorrect in terms of what the witness recalls or is it incorrect in how the statement is written in the form that it appears before the witness?
"MR. MARTIN: I'll rephrase it, your Honor.
"THE COURT: All right, please do, Mr. Martin.
"Q (BY MR. MARTIN) You read those words that I just read to you; right?
"You can read what I just read; can't you?
"A Yes, sir.
"Q All right. Now, if that's what Tpr. Johnson says you told him on that date, then are you saying that Tpr. Johnson is incorrect?
"A Yes, sir.
"Q Now, this happened on—your sister was killed on September 5th, right, or thereabouts?
"A Yes, sir.
"Q And this statement was taken two days after that; right?
"A (Nods head up and down)
"Q Would your memory be better then than it is now?
"A No.

fore, find this claim of error to be without merit.

## VI.

The defendant also cites as error the admission of evidence of flight. In a motion made orally before jury selection was completed, the defendant requested an *in camera* hearing to determine whether the probative value of such evidence outweighed the possibility of prejudice.[4] The court took the motion under advisement, but did not make a ruling. There was no objection when testimony was received concerning the defendant's statement to the Oldhams that he was in Myrtle Beach. The State now contends that the error was waived.

We recently discussed the procedure for in limine motions. In *Wimer v. Hinkle*, 180 W.Va. 660, 379 S.E.2d 383– (1989), the defendant moved to exclude certain evidence claimed to be barred by the Dead Man's Act. This motion was overruled by the court and the defendant's objection was duly noted. The defendant did not object at the time the evidence was offered. We held that the error was not waived, and stated in Syllabus Point 1:

"An objection to an adverse ruling on a motion in limine to bar evidence at trial will preserve the point, even though no objection was made at the time the evidence was offered unless there has been a significant change in the basis for admitting the evidence."

"Q   You think your memory is better now?
"A   Well, yes, because I was pretty well shook up over what happened."

4. We stated in Syllabus Point 6 of *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981):
"In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should hold an *in camera* hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect."

5. State's Instruction No. 5 read, in pertinent part:

We were careful in *Wimer* to distinguish our prior decision in *State v. Clark*, 170 W.Va. 224, 292 S.E.2d 643 (1982). *Clark* involved an in limine motion to exclude some gruesome photographs. The court did not rule on the motion, and the defendant did not object when the State offered the photographs at trial. We held that the failure to object constituted a waiver.

We find that the case at hand is controlled by *Clark*. To come within the rule announced in *Wimer*, the court must first rule on the in limine motion and an objection must be made to that ruling. As *Wimer* phrases it, evidentiary error may be preserved by "[a]n objection *to an adverse ruling* on a motion in limine." 180 W.Va. at 661, 379 S.E.2d at 384. Here no adverse ruling on the defendant's in limine motion was made. Consequently, an objection was required under *Clark* when the evidence was offered at trial. The defendant's failure to do so thus constituted a waiver of the error.

## VII.

We turn next to the defendant's instructional errors. The defendant objected to two instructions that dealt with the role of circumstantial evidence. State's Instruction No. 5 defined direct and circumstantial evidence and informed the jury, in part, that it may make inferences on the basis of circumstantial evidence "if when taken as a whole or fairly and candidly weighed it convinces   the   guarded   judgment."[5]

"[T]he Court instructs the jury that from the very nature of the crimes of murder and sexual assault and the secrecy with which the same may be committed, circumstantial evidence is often the only kind of evidence which can be produced against the party charged with their commission; that circumstantial evidence is a valuable means of the law of ascertaining the truth of any fact at issue in a court and is to be regarded in all cases by the jury; that when it is strong and convincing the jury should so consider it, neither enlarging nor belittling its force. And if when taken as a whole or fairly and candidly weighed it convinces the guarded judgment, the jury should act on such convictions. The jury is not to fancy the situations and circumstances which do not appear in evidence, but are to make those just and reasonable infer-

State's Instruction No. 6 noted that the defendant may be convicted if "as to time, place, motive, means and conduct [circumstantial evidence] concurs in pointing to the accused as the perpetrator of the crime."[6] The defendant asserts that these instructions relieved the State of its burden of proof.

■ It is axiomatic that jury instructions must be read as a whole, as we said in Syllabus Point 4 of *State v. Vance*, 168 W.Va. 666, 285 S.E.2d 437 (1981):

" 'The giving of a confusing or incomplete instruction does not constitute reversible error when a reading and consideration of the instructions as a whole cure any defects in the complained of instructions.' Syllabus Point 4, *State v. Stone*, [165] W.Va. [266], 268 S.E.2d 50 (1980)."

■ We find that, when read as a whole, the circumstantial evidence instructions in this case were proper. There may be some question as to the failure of State's Instruction No. 5 to contain the customary language that "[c]ircumstantial evidence will not support a guilty verdict, unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence[.]" Syllabus Point 2, in part,

*State v. Phillips, supra*. However, it is clear from the record that the defendant made no objection to this oversight. State's Instruction No. 5 reminded the jury on no less than three occasions that the State was required to prove guilt beyond a reasonable doubt. The phrase "reasonable doubt" was fully defined elsewhere in the instructions. State's Instruction No. 6 was a correct statement of our law and was, therefore, properly read to the jury. *See, e.g., State v. Dobbs*, 163 W.Va. 630, 259 S.E.2d 829 (1979); *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967); *State v. Beale*, 104 W.Va. 617, 141 S.E. 7 (1927).

■ The defendant also objects to State's Instruction No. 8, which advised the jury that premeditation need not exist for a specific time, but may "come into existence for the first time at the time of such killing, or at any time previously."[7] This instruction, popularly known as the *Clifford* instruction,[8] was thoroughly discussed and approved in *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982), and *State v. Schrader*, 172 W.Va. 1, 302 S.E.2d 70 (1982). Defendant's Instruction No. 5, which attempted to define premeditation in terms of "advance thought and planning," was properly refused as contrary to *Hatfield* and *Schrader*.[9]

---

ences from the circumstances proven which they, with guarded judgment as reasonable people, ordinarily would make under like circumstances in grave transactions of life.

"One charged with [a] crime may be convicted upon circumstantial evidence alone, or upon circumstantial evidence connected with other evidence, if the jury believes beyond a reasonable doubt from the circumstantial evidence connected with other evidence that the person or persons so charged are guilty of the crime charged against them in the indictment; therefore, the Court instructs the jury in this case that they have the right to convict the defendant upon circumstantial evidence alone, or upon circumstantial evidence coupled with other evidence, if the jury from such circumstantial evidence connected with other evidence believe the guilt of the defendant beyond a reasonable doubt. The Court further instructs the jury that circumstantial evidence is not only competent but is sometimes the only mode of proof; and therefore, if the jury believe from the evidence and circumstances in this case, beyond a reasonable doubt, that the accused committed the

offense as charged against him in the indictment, then they may find him guilty."

6. State's Instruction No. 6 read, *in its entirety*:
   "The Court instructs the jury that if on a trial for murder the evidence is wholly circumstantial, but as to time, place, motive, means and conduct it concurs in pointing to the accused as the perpetrator of the crime, he may properly be convicted."

7. State Instruction No. 8 read, *in its entirety*:
   "The Court instructs the jury that to constitute a wilful, malicious, deliberate and premeditated killing it is not necessary that the intention to kill exist for any particular length of time prior to the actual killing; it is only necessary that such intention come into existence for the first time at the time of such killing, or at any time previously."

8. This name is derived from *State v. Clifford*, 59 W.Va. 1, 52 S.E. 981 (1906), our first case to approve the instruction.

9. Defendant's Instruction No. 5 read: "The Court instructs the jury that the term 'premedi-

## VIII.

 The defendant asserts finally that the joinder of the misdemeanors in the indictment was unduly prejudicial. Specifically, he claims that the opprobrium associated with the more serious felonies hampered his defense of the misdemeanors. It is well settled that the decision to relieve the defendant from an otherwise proper joinder lies within the discretion of the circuit court. We stated this rule in Syllabus Point 6, in part, of *State v. Mitter,* 168 W.Va. 531, 285 S.E.2d 376 (1981):

> "[W]here there has been either a joinder of separate offenses in the same indictment or the consolidation of separate indictments for the purpose of holding a single trial, the question of whether to grant a motion for severance rests in the sound discretion of the trial court."

*See also State v. Hatfield,* 181 W.Va. 106, 380 S.E.2d 670 (1988); *State v. Judy,* 179 W.Va. 734, 372 S.E.2d 796 (1988); *State v. McFarland,* 175 W.Va. 205, 332 S.E.2d 217 (1985).

We find the court's refusal to sever the misdemeanors to have been a proper exercise of discretion. The defendant does not contend that the joinder prevented the presentation of all available defenses, inhibited his ability to testify, or led the jury impermissibly to cumulate the evidence. His only claim is the generalized assertion that the felonies somehow overshadowed ·the misdemeanors. This is not in itself sufficient to justify relief from joinder.

## IX.

For the reasons hereinbefore set forth, the judgment of the Kanawha County Circuit Court is affirmed.

Affirmed.

McGRAW, J., participated and concurred in this decision, but departed from the Court prior to the preparation of the opinion.

tated' refers to the planning of an act and the subsequent execution of such act, and the law requires some evidence of advance thought and

WORKMAN, J., did not participate in the consideration or decision of this case.

planning before you may find that such 'premeditated' act has taken place."