408 S.E.2d 24

**STATE of West Virginia, Appellee,**

v.

**Paul W. DRENNEN, Appellant.**

**No. 19813.**

Supreme Court of Appeals of West Virginia.

Submitted May 14, 1991.

Decided July 11, 1991.

Dissenting Opinion of Chief Justice Miller July 31, 1991.

---

Teresa A. Tarr, Asst. Atty. Gen., Charleston, for appellant.

William E. Kiger, Parkersburg, for appellee.

PER CURIAM.

This is an appeal by Paul W. Drennen from an order of the Circuit Court of Wood County sentencing him to three concurrent terms of from one to five years in the State penitentiary on three counts of delivery of marijuana, a controlled substance, to persons under the age of eighteen. On appeal, the defendant claims that the circuit court erred in sentencing him to multiple punishments for what, if proven, he claims constituted a single offense under the laws of the State of West Virginia. He also claims that the circuit court abused its discretion in failing to grant him separate trials on the three counts charged. He further argues that the State failed to prove that he was guilty of delivering marijuana that there, in effect, was no evidence that he delivered marijuana as described in the Uniform Controlled Substances Act. After reviewing the record, this Court finds that it fails to support the defendant's contentions, and the Court can find no reversible error. Accordingly, the judgment of the Circuit Court of Wood County is affirmed.

The evidence adduced in this case shows that on June 29, 1989, three juveniles approached the defendant, who at the time was in the Parkersburg City Park, and told him that they wanted some marijuana. Shortly thereafter, the defendant and the juveniles got into an automobile and drove to a residence where the defendant indicated that he could obtain the marijuana which the juveniles were seeking.

Unknown to the defendant and the juveniles, the residence was being "staked out" by police officers at the time the defendant and the juveniles arrived. The police officers observed the defendant enter the residence and return to the automobile. A short time later, the police stopped the automobile for running a red light. As the automobile was being pulled over, one of the juveniles, who was seated in the rear of the car, placed something under the front passenger seat where the defendant was sitting. After the vehicle was stopped, one of the juveniles voluntarily told the police that there was marijuana in the car and that the defendant had obtained it. The police officers then located the bag placed under the seat and took it into custody.

During trial, Ronald K. Taylor, II, a forensic chemist with the West Virginia Department of Public Safety, testified that he received the bag of suspect substance and that he analyzed a sample of it. He weighed it and found that the sample contained 1.2 grams of substance. Two tests, a thin-layer chromatogram and a modified Duquenoise–Levine chemical test, which detect the presence of cannabinoids, the active agents in marijuana, were performed, and Chemist Taylor concluded from the test results, as well as from his physical examination of the substance, that it was marijuana.

At the conclusion of the trial, the jury returned three guilty verdicts, one as to each of the three counts in the indictment.

On appeal, the defendant's first contention is that the trial court erred in sentencing him for three offenses when the evidence adduced during trial showed that, at most, he committed one offense. In conjunction with this, he argues that it was

undisputed at trial that no more than one baggie of suspect marijuana was involved and that the baggie had never been divided or subdivided, but had always remained one single package. He points out that there was no dispute in the evidence that the substance was delivered by the defendant to only one of the three juveniles.

The defendant's contention that he has improperly received three sentences is grounded in the State constitutional prohibition against double jeopardy found in Article III, § 5 of the West Virginia Constitution. That provision provides that a person may not be twice put in jeopardy of life or liberty for the same offense.

In a number of cases, this Court has discussed what constitutes a single offense for the purposes of the double jeopardy clause. In *State ex rel. Dowdy v. Robinson*, 163 W.Va. 154, 257 S.E.2d 167 (1979), the Court indicated that there are two tests normally used to resolve double jeopardy questions when a person is being tried twice for charges growing out of one sequence of events. The first test, which is generally known as the "same evidence" test, indicates that a person is being tried for the same offense twice if the State must adduce identical evidence to prove two charged offenses. Where such a situation exists, the State may properly, under the double jeopardy rule, impose only one sentence on the defendant. On the other hand, if different facts must be proved to establish two charged offenses, then the offenses are different, and multiple punishments may be imposed. In explaining this test, the Court stated in *State ex rel. Dowdy v. Robinson, id.* 163 W.Va. at 157, 257 S.E.2d at 169, that:

> In 1932, the United States Supreme Court adopted the "same evidence" test for defining the fifth amendment phrase "same offense" when applied to multiple counts in one trial, holding that:
>
> > [T]he applicable rule is that, where the same act or transaction constitutes a violation of the two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each

provision requires proof of a fact which the other does not.... *Blockburger v. United States*, 284 U.S. 299 at 304, 52 S.Ct. 180 at 182, 76 L.Ed. 306 (1932).

The second test used in resolving questions where a person is charged twice for matters growing out of the same sequence of events is the so-called "same transaction" test. The same transaction test looks to the criminal act itself. If the offense charged arose out of a single criminal transaction or occurrence, then the accused may be charged with only one offense.

In *State ex rel. Johnson v. Hamilton*, 164 W.Va. 682, 266 S.E.2d 125 (1980), the Court examined the "same evidence" test and the "same transaction" test in conjunction with the double jeopardy rule. In that case, the Court concluded that where a defendant was charged with several offenses growing out of the same transaction, the State was required to try all charges arising out of the single transaction in one trial. However, the Court further recognized that a single sequence of events could give rise to multiple criminal offenses which would support multiple punishment. The Court summarized this in syllabus point 3, as follows:

> Although under double jeopardy principles the proper procedure is a trial of all offenses arising out of the same "criminal transaction" jointly, separate punishments may be imposed for separate offenses arising out of a single criminal transaction.

In effect, the Court ruled that the "same transaction" test was to be used to determine the propriety of joinder of offenses at trial, but that the "same evidence" test was to be used to determine whether multiple punishments could be imposed.

In the later cases of *State ex rel. Watson v. Ferguson*, 166 W.Va. 337, 274 S.E.2d 440 (1980), and *Gilkerson v. Lilly*, 169 W.Va. 412, 288 S.E.2d 164 (1982), the Court concluded that the "same transaction" test was to be used to determine the propriety of the joinder of trials on multiple charges growing out of the same sequence of events, and that it was not to be used to

determine whether a person could be charged with, or punished for, multiple offenses arising out of the same sequence of events. The determination of whether a person may be tried for and convicted of more than one offense is to be made by use of the "same evidence" test which, as previously stated, provides that the "... offenses are the same unless one offense requires proof of a fact which the other does not ..." Part, syllabus point 1, *State ex rel. Dowdy v. Robinson, supra.*

In the present case, there is evidence that three juveniles were seeking to obtain marijuana. To obtain that marijuana, they pooled their money and approached the defendant to procure it for them. There is evidence that the defendant procured the marijuana, apparently with the joint funds, and that in the course of the sequence of events the defendant was accompanied by the three juveniles. There is further evidence that the defendant delivered marijuana to one of the juveniles in the presence of the others.

The defendant was, in effect, charged with delivering marijuana to each of the three juveniles. To prove those offenses, it was necessary, in this Court's view, that the State prove that each of the juveniles was to be a recipient of the marijuana.

Under the "same evidence" test, this Court believes that the defendant was, in effect, charged with three separate offenses—delivery of marijuana, either actually or constructively, to each of the three juveniles. Proof of actual delivery to one of the juveniles was required, as well as proof of facts constituting constructive delivery to reach of the other juveniles.

Since proof of different facts, the fact of actual delivery in the one case and the fact of circumstances supporting constructive delivery in each of the other cases, as well as the fact of intent to deliver to three separate individuals, was necessary, this Court concludes that under the "same evidence" test, the defendant properly could have been, and was, convicted of three offenses growing out of the sequence of events in this case.

■ On appeal, the defendant also argues that the trial court abused its discretion in refusing to grant him separate trials on the three counts in the indictment.

On or about April 26, 1990, prior to the commencement of his trial, the defendant made a motion to sever pursuant to Rule 15 of the West Virginia Rules of Civil Procedure. In that motion, he requested that the court grant him separate trials. After conducting a hearing upon the motion, the trial court denied it. During trial, the defendant moved to sever the trials, and the motion was also denied by the court.

As indicated by the cases previously discussed, especially *State ex rel. Johnson v. Hamilton, supra, State ex rel. Watson v. Ferguson, supra,* and *Gilkerson v. Lilly, supra,* it is appropriate that a defendant charged with multiple offenses arising out of the same transaction be tried jointly at the same trial. Further, it is stated in syllabus point 3 of *State ex rel. Johnson v. Hamilton* that "... under double jeopardy principles the proper procedure is a trial of all offenses arising out of the same 'criminal transaction' jointly...."

■ When a motion to sever is made, it is generally recognized that the decision to grant or deny that motion rests in the sound discretion of the trial court. *State v. Parsons,* 181 W.Va. 56, 380 S.E.2d 223 (1989); *State v. Mitter,* 168 W.Va. 531, 285 S.E.2d 376 (1981). The rule, as set forth in syllabus point 6 of *Mitter,* holds that:

> The joinder of related offenses to meet possible variance in the evidence is not ordinarily subject to a severance motion. In those other situations where there has been either a joinder of separate offenses in the same indictment or the consolidation of separate indictments for the purpose of holding a single trial, the question of whether to grant a motion for severance rests in the sound discretion of the trial court.

In *Mitter,* the Court pointed out the circumstances which might make a failure to sever trials an abuse of discretion:

> [J]oinder or consolidation may prejudice the defendant because the jury may tend to cumulate the evidence of the various

offenses and convict the defendant on all offenses charged on the theory he is a bad individual rather than weigh the evidence separately on each offense. From the defense standpoint, trial on multiple offenses may make it difficult to establish separate defenses to individual charges.

*State v. Mitter, id.* 168 W.Va. at 543, 285 S.E.2d at 383.

In the present case, although as previously noted there were distinctions in proof required for each of the charges against the defendant, the charges all grew out of one transaction, the purchase of marijuana. This Court does not believe that the proof of that single transaction tended to cumulate evidence of various offenses to show that the defendant was a bad person as proscribed by *Mitter.* The Court also fails to find that the joint trial made it so difficult to separate the offenses as to conclude that the trial judge abused his discretion in failing to grant the defendant's motion for severance.

■ The defendant's remaining assertions principally center on the adequacy of the evidence adduced during the trial. He argues that the State failed to prove that he delivered marijuana, with the focus being upon the proof of delivery, and next, he claims that there was no evidence that the substance which the State claimed he delivered was, in fact, the type of marijuana described in the Uniform Controlled Substances Act.

■ This Court has repeatedly indicated that in determining whether the evidence adduced is sufficient to support the verdict in a criminal trial, the evidence must be weighed in the light most favorable to the State. The rule, as set forth in syllabus point 1 of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978), provides:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To war-

rant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

*See also, State v. Smith,* 181 W.Va. 700, 384 S.E.2d 145 (1989); *State v. Stiff,* 177 W.Va. 241, 351 S.E.2d 428 (1986); *State v. Meadows,* 172 W.Va. 247, 304 S.E.2d 831 (1983); *State v. Dye,* 167 W.Va. 652, 280 S.E.2d 323 (1981).

In the present case, the evidence adduced during trial showed that the juveniles involved approached the defendant for the purposes of obtaining marijuana. The defendant, after he was approached, drove the juveniles to a location under surveillance by the police as a drug dealer's residence. After entering the house, the defendant, according to the testimony of one of the juveniles, transferred a bag of a substance to one of the juveniles. At trial, State Police Forensic Chemist Ronald Taylor, who was an expert in marijuana identification and who addressed the question of whether the type of marijuana prohibited under the Controlled Substances Act was involved in this case, expressed the opinion that the substance which he examined, and which had been seized by the police, was marijuana. His conclusion was based in part on the results of a thin-layer chromatogram chemical test and a modified Duquenoise–Levine chemical test, tests generally recognized to be designed to determine whether there are cannabinoids, or the active ingredients in marijuana, in a substance.

Given the nature of the evidence, this Court believes that when it is viewed in the light most favorable to the State, it demonstrates that the State did prove the crimes charged.

For the reasons set forth, the judgment of the Circuit Court of Wood County is affirmed.

Affirmed.

MILLER, Chief Justice, dissenting:

I have difficulty in finding that the delivery of one bag containing 1.2 grams of

marijuana to one individual constitutes three separate and distinct offenses of delivery of marijuana. The majority avoids this hurdle by blundering around in the thicket of double jeopardy to demonstrate multiple offenses.

What the majority fails to consider is a straightforward analysis of our statutory definition of delivery and our case law under it. W.Va.Code, 60A–1–101(g) (1983), defines "delivery" as the "actual, constructive, or attempted transfer from one person to another of ... a controlled substance[.]" * Thus, a delivery involves a transfer either actual, constructive, or attempted. We defined a "constructive transfer" in Syllabus Point 4 of *State v. Ellis*, 161 W.Va. 40, 239 S.E.2d 670 (1977), which involved a similarly worded precursor of W.Va.Code, 60A–1–101(g), as follows:

> "Under *W.Va.Code*, 60A–1–101(f) (1971), 'constructive transfer' of a controlled substance means the transfer of a controlled substance belonging to an individual or under his control by some other person or agency at the instance or direction of the individual accused of such constructive transfer."

*See also State v. Presgraves*, 174 W.Va. 683, 328 S.E.2d 699 (1985).

In *Ellis*, the defendant had induced a Mr. Browning to deliver marijuana owned by the defendant to a third party. Mr. Browning did so and took the third party's money and gave it to the defendant. Others courts have adopted a similar view of the term "constructive transfer" as centering on the defendant's use of a third party to transfer the controlled substance. *See, e.g., Laird v. State*, 483 N.E.2d 68 (Ind. 1985); *State v. Jochims*, 241 N.W.2d 25 (Iowa 1976); *State v. Howell*, 196 Neb. 832, 246 N.W.2d 479 (1976); *State v. McHorse*, 85 N.M. 753, 517 P.2d 75 (App.1973); *Queen v. State*, 662 S.W.2d 338 (Tex.Crim. App.1983); *State v. Campbell*, 59 Wash. App. 61, 795 P.2d 750 (1990).

The obvious purpose of the constructive transfer doctrine is to prevent the defen-

dant from escaping liability merely because he did not make the actual transfer. If he controlled the method of transfer, he is still criminally liable. A constructive delivery is viewed from the perspective of the defendant's activities in directing the course of the transfer of the controlled substance. In this case, the defendant himself made the actual transfer by handing one baggie to a single person. He is guilty of a single offense. Consequently, the multiple sentences imposed by the trial court violate double jeopardy principles. *See State v. Barnett*, 168 W.Va. 361, 284 S.E.2d 622 (1981).

Rather than accept the admitted fact that there was only one transfer, the majority ignores the entire transfer question. I cannot believe the majority intends to skew our law by holding that once a transfer is complete, it is permissible to see who else may utilize the controlled substance and then to indict the defendant for those subsidiary "constructive transfers." This is a result that no court has accepted to my knowledge. Moreover, it would stretch the definition of constructive transfer far beyond its ordinary meaning. We are committed to the rule of lenity that penal statutes are to be strictly construed against the State and in favor of the defendant. *State ex rel. Coombs v. Barnette*, 179 W.Va. 347, 368 S.E.2d 717 (1988); *State v. Brumfield*, 178 W.Va. 240, 358 S.E.2d 801 (1987); *State v. Hartshorn*, 175 W.Va. 274, 332 S.E.2d 574 (1985).

I can only surmise that either the majority did not understand the transfer question, or that it did, but, in its zeal to uphold the conviction, resorted to a contorted double jeopardy analysis. In any event, I dissent.

---

\* The entire text of W.Va.Code, 60A–1–101(g), is:
  " 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of (1) a controlled substance, whether or not there is an agency

relationship, (2) a counterfeit substance, or (3) an imitation controlled substance."
The substantive offense of delivery of a controlled substance is set out in W.Va.Code, 60A–4–401 (1983).