476 S.E.2d 522

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Robert C. JOHNSON, Defendant Below, Appellant.**

No. 22954.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 16, 1996.

Decided May 21, 1996.

George F. Fordham, Clarksburg, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Scott E. Johnson, Assistant Attorney General, for Appellee.

McHUGH, Chief Justice:

The defendant, Robert C. Johnson, appeals his jury conviction in the Circuit Court of Upshur County of first offense driving under the influence of alcohol (hereinafter "DUI").[1] The circuit court sentenced the defendant to forty days in the county jail, fined him $100.00, and assessed against him the court costs. For reasons stated below, we affirm the defendant's conviction.

I.

On May 9, 1993, a police officer saw the defendant driving his car left of the center line. Upon stopping the defendant's vehicle, the police officer noticed a strong odor of alcohol coming from the defendant. The police officer conducted a series of field sobriety tests which the defendant failed. Thus, the police officer placed the defendant under arrest and transported him to the jail in order to administer a secondary breath test.

Upon arriving at the jail, the defendant requested that he be allowed to speak to an attorney. The police officer informed the defendant that he could do so only after the secondary breath test was given. The defendant refused to submit to the secondary breath test.

Thereafter, the police officer issued a traffic citation for driving left of center. The defendant pled guilty to driving left of center and paid a fine and court costs on the night of his arrest.

Additionally, the police officer filed a criminal complaint charging the defendant with second offense DUI after a check on the defendant's driver's license revealed that he had a 1983 conviction for DUI. Subsequently, the State learned that the defendant had been convicted in 1988 of DUI in Maine. Thus, an indictment was returned charging the defendant with third offense DUI pursuant to W. Va.Code, 17C–5–2(j) [1986].

However, prior to trial the trial judge found that the defendant's previous two offenses could not be used for enhancement purposes because the 1983 DUI offense had been dismissed for failure to prosecute and because the State had failed to produce a certified copy of the 1988 DUI conviction in Maine. Thus, the case proceeded to trial on a charge of first offense DUI.

On appeal the defendant raises three issues which we will address. The first two issues concern the indictment and the third issue concerns double jeopardy principles.

II.

The first issue is whether the trial court erred in refusing to quash the indictment on the grounds that the indictment charged an offense which the State could not possibly prove. The indictment charged the defendant with third offense DUI; however, as stated above, prior to trial the trial judge found that the two underlying DUI offenses in the indictment could not be used for en-

---

1. The defendant was convicted pursuant to W.Va. Code, 17C–5–2 [1986], which establishes the penalties for driving under the influence of alcohol, controlled substances or drugs. W. Va. Code,

17C–5–2 was amended in 1994 and 1995; however, the amendments do not affect the case before us.

hancement purposes. The trial judge expressed his desire to redact the indictment on the day of the trial in order to reflect that the defendant was only being charged with first offense DUI.

The defendant's trial counsel objected to the indictment being redacted, and argued that the trial judge should dismiss the indictment and permit the State to re-file a misdemeanor charge for first offense DUI in magistrate court. The trial judge refused to dismiss the indictment and reiterated his willingness to redact the indictment. The defendant's trial counsel continued to object to the indictment being redacted, so the trial judge did not change the indictment. The jury verdict form, however, only allowed the jury to find the defendant guilty or not guilty of first offense DUI.

■ This Court recently discussed whether a trial judge has authority to redact an indictment in *State v. Adams,* 193 W.Va. 277, 456 S.E.2d 4 (1995). We recognized in *Adams,* 193 W.Va. at 280, 456 S.E.2d at 7, that " ' "[a] valid indictment or presentment can be made only by a grand jury; and no court can make an indictment in the first instance or alter or amend the substance of an indictment returned by a grand jury." Syllabus Point 5, *State v. McGraw,* 140 W.Va. 547, 85 S.E.2d 849 (1955).' Syllabus Point 2, *State v. Pruitt,* 178 W.Va. 147, 358 S.E.2d 231 (1987)." [2] However, in some situations resubmitting the indictment to the grand jury in order to make nonsubstantive changes would serve no other purpose than to waste time, money and energy. *Id.* at 283 n. 12, 456 S.E.2d at 10 n. 12. Thus, this Court held in *Adams* that a trial judge has authority under certain circumstances to redact the indictment:

> 2. To the extent that *State v. McGraw,* 140 W.Va. 547, 85 S.E.2d 849 (1955), stands for the proposition that 'any' change to an indictment, whether it be form or substance, requires resubmission to the grand jury for its approval, it is hereby expressly modified. An indictment may be amended by the circuit court, provided the amend-

ment is not substantial, is sufficiently definite and certain, does not take the defendant by surprise, and any evidence the defendant had before the amendment is equally available after the amendment.

> 3. Any substantial amendment, direct or indirect, of an indictment must be resubmitted to the grand jury. An 'amendment of form' which does not require resubmission of an indictment to the grand jury occurs when the defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced.

Syl. pts. 2 and 3, *Adams, supra.*

*Adams* does not change or undermine the function of the grand jury in any way. *Adams* simply recognizes that when the amendment or alteration to the indictment is one of "form" rather than "substance," then judicial economy is better served by allowing the trial judge to make the amendment or alteration rather than having the grand jury reconvene. We further stated in *Adams* that the "decision whether the change is merely as to form as opposed to a new offense is best left to the discretion of the circuit court." *Id.* at 283, 456 S.E.2d at 10.

■ In the case before us, the trial judge wanted to redact the indictment prior to trial by changing the charge from third offense DUI to first offense DUI in order to reflect the proof that would be adduced at trial. Clearly, this would be a change in form rather than substance because the defendant would not be misled in any sense, would not be subjected to any added burden of proof, and would not be otherwise prejudiced.

The factual allegations which supported the defendant's conviction for first offense DUI were set forth in the indictment. The trial judge, wishing to narrow the charge, offered to strike the factual allegations relating to the two prior DUIs. In other words, he did not want to create a new charge. This action would not have interfered with the notice, double jeopardy, and screening functions of the grand jury indictment. Thus,

---

**2.** *W. Va. Const.* art. III, § 4 states, in relevant part, that "[n]o person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury."

based upon the principles set forth in *Adams, supra,* the trial judge would not have abused his discretion if he had redacted the indictment by striking out the allegations pertaining to the prior two DUIs.

However, the trial judge ultimately did not redact the indictment in the case before us because of the defense counsel's objection. As a result, there was a variance between the indictment and the proof adduced at trial. *Adams, supra,* did not directly address this issue.

Courts addressing the issue have held that not "[e]very variation between an indictment and proof at trial ... create[s] reversible error. A variation that has the effect of actually or constructively amending the indictment requires reversal, whereas one that adds nothing to the indictment, while a variance, may constitute harmless error." *United States v. Zelinka,* 862 F.2d 92, 96 (6th Cir.1988). *See also United States v. Zingaro,* 858 F.2d 94, 98 (2d Cir.1988). Thus, the question, in the case before us, is whether the fact that the indictment charged the defendant with third offense DUI, but the evidence at trial only supported a conviction of first offense DUI, is merely a variance or, instead, is an actual or a constructive amendment requiring reversal.

The Supreme Court of the United States was confronted with a similar set of facts in *United States v. Miller,* 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985).[3] In *Miller,* the defendant was charged with mail fraud by defrauding an insurer pursuant to 18 U.S.C. § 1341 (1982). The indictment alleged that the scheme to defraud included **both** consenting to the burglary of the defendant's business **and** lying to the insurer about the value of his loss from the burglary. At trial, however, proof was only offered regarding the allegation of whether the defendant lied to his insurer about the value of his loss. The government moved to strike that portion of the indictment which alleged that the defendant had consented to the burglary in advance. Because the defendant's

counsel objected to the change, the entire indictment was sent to the jury.

The defendant appealed his conviction arguing that the proof at trial fatally varied from the allegations in the indictment. The Court of Appeals found that the defendant's right to be tried by a grand jury had been violated because the defendant had a right to be free from being tried on an offense other than that alleged in the indictment. *See United States v. Miller,* 715 F.2d 1360 (9th Cir.1983), modified, 728 F.2d 1269 (9th Cir. 1984).

The Supreme Court of the United States disagreed with the Court of Appeals and stated that the variance between the indictment and proof at trial did not constitute an unconstitutional amendment to the indictment because the proof at trial merely narrowed the basis for conviction and did not broaden the basis beyond what was in the indictment. *Miller,* 471 U.S. at 145, 105 S.Ct. at 1820, 85 L.Ed.2d at 111. In arriving at its conclusion the Supreme Court of the United States explicitly overruled that portion of *Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887) which held that "it constitutes an unconstitutional amendment to drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it[.]" *Miller,* 471 U.S. at 144, 105 S.Ct. at 1819, 85 L.Ed.2d at 110.

The rationale of the Supreme Court of the United States was that under the facts before it in *Miller* the traditional functions of the grand jury were not encroached upon:

[c]ompetent defense counsel certainly should have been on notice that that offense [the offense regarding the lie to defendant's insurer] was charged and would need to be defended against. Accordingly, there can be no showing here that [the defendant] was prejudicially surprised at trial by the absence of proof concerning his alleged complicity in the burglary; nor can there be a showing that the variance prejudiced the fairness of [defendant's] trial in any other way.... The indictment was

---

**3.** The United States Court of Appeals of the Second Circuit provided a well written analysis of *Miller, supra,* in *Zingaro, supra.* The discussion

which follows in the text of this opinion will follow the format used in *Zingaro.*

also sufficient to allow [the defendant] to plead it in the future as a bar to subsequent prosecutions. Therefore, none of these 'notice' related concerns—which of course are among the important concerns underlying the requirement that criminal charges be set out in an indictment—would support the result of the Court of Appeals.

*Id.* at 134–35, 105 S.Ct. at 1814, 85 L.Ed.2d at 104 (citations omitted).

The court in *Miller* cautioned, however, that *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) stood for a different proposition than that announced in *Miller.* Therefore, *Stirone* should be considered when analyzing a double jeopardy issue. *Miller,* 471 U.S. at 138–40, 105 S.Ct. at 1816–17, 85 L.Ed.2d at 106–07. In *Stirone,* the indictment charged the defendant with violating the Hobbs Act by unlawfully interfering with interstate commerce with respect to the importation of sand and other materials for use in the manufacture of concrete. *Stirone,* 361 U.S. at 213–14, 80 S.Ct. at 271, 4 L.Ed.2d at 254–55. At trial, however, an alternative basis for conviction was established with the introduction of evidence which showed that the concrete was used to construct a steel mill from which manufactured goods were shipped into interstate commerce. *Id.* On appeal the Supreme Court of the United States reversed Sitrone's conviction stating that he may have been convicted on a charge that the grand jury never made against him. *Id.* at 219, 80 S.Ct. at 274, 4 L.Ed.2d at 258.

In *Miller,* the Supreme Court of the United States explained the difference between *Stirone* and *Miller:*

> In contrast to Sitrone, Miller was tried on an indictment that clearly set out the offense for which he was ultimately convicted. His [Miller's] complaint is not that the indictment failed to charge the offense for which he was convicted, but that the indictment charged more than was necessary.

*Miller,* 471 U.S. at 140, 105 S.Ct. at 1817, 85 L.Ed.2d at 107. In other words, the difference between *Stirone* and *Miller* is that *Stirone* involved enlarging or broadening the defendant's charges, whereas *Miller* involved narrowing the defendant's charges.

■ Clearly, the notice, double jeopardy and screening functions of the grand jury would be evaded if a defendant's charges were broadened by the variance between the indictment and the proof at trial. In effect, the broadening of the charges against the defendant would be an actual or a constructive amendment of the indictment rather than a variance. *See, e.g., Zingaro, supra* (When the proof at trial broadens the charges in the indictment a constructive amendment of the indictment occurs which is reversible error); *United States v. Cusmano,* 659 F.2d 714 (6th Cir.1981), appeal after remand, 729 F.2d 380 (1984), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984). However, the notice, double jeopardy and screening functions of the grand jury are less likely to be trampled upon if the defendant's charges are narrowed by the variance between the indictment and the proof at trial. *See, e.g., United States v. Castro,* 776 F.2d 1118, 1123 (3rd Cir.1985) (The variation "narrowed the scope of the evidence to prove an offense included in the indictment[;]" therefore, the variation was not an amendment which violates the fifth amendment's grand jury guarantee), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986); *Zelinka,* 862 F.2d at 97 (The evidence of the defendant's "involvement in cocaine transactions a few days after the end of the conspiracy charged in the indictment did not create a fatal variance.").

■ Whether a variance between the indictment and the proof adduced at trial requires reversal depends upon whether it affects substantial rights of the accused: "Any error, defect, irregularity or *variance* which does not affect substantial rights shall be disregarded." *W. Va. R.Crim. P.* 52(a) (emphasis added). In order to determine whether the variance affects substantial rights of the accused the analysis set forth in syllabus point 3, in relevant part, of *Adams, supra,* is useful: "An 'amendment of form' which does not require resubmission of an indictment to the grand jury occurs when the defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced." If the defendant is misled, is subjected to an added burden of proof, or is prejudiced by the

difference between the indictment and proof adduced at trial, then the difference is an actual or a constructive amendment of the indictment which is reversible error. Whether the difference between the indictment and proof adduced at trial is merely a variance or whether the difference is an actual or a constructive amendment of the indictment will have to be determined on a case-by-case basis. *Cf. Adams*, 193 W.Va. at 282, 456 S.E.2d at 9.

■ Accordingly, we hold that if the proof adduced at trial differs from the allegations in an indictment, it must be determined whether the difference is a variance or an actual or a constructive amendment to the indictment. If the defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced, then the difference between the proof adduced at trial and the indictment is a variance which does not usurp the traditional safeguards of the grand jury. However, if the defendant is misled, is subjected to an added burden of proof, or is otherwise prejudiced, the difference between the proof at trial and the indictment is an actual or a constructive amendment of the indictment which is reversible error.

■ In the case before us, the fact that the proof at trial differed from the allegations in the indictment was not reversible error. As we have previously stated, the indictment charged the defendant with third offense DUI; however, the proof adduced at trial only supported a verdict for first offense DUI. Clearly, the factual allegations for first offense DUI were set forth in the indictment. The fact that two offenses of DUI listed in the indictment were not proven at trial does not in any way mislead the defendant, subject him to an added burden of proof, or prejudice him. There was no actual or constructive amendment of the indictment because the indictment was merely narrowed. Therefore, the notice, double jeopardy and screening functions of the grand jury were not usurped.

### III.

The second issue is whether the trial court erred in refusing to sustain the defendant's objection to the jury receiving a copy of the full indictment which contained allegations of prior offenses which were void or not otherwise permitted to be used at trial.

■ As stated above, after refusing to quash the indictment, the trial judge offered to redact the indictment by removing the prior two DUI offenses so that the indictment would reflect that the defendant was only being charged with first offense DUI. However, the defendant's counsel objected to the indictment being redacted. Thus, the defendant invited the error he now complains of on appeal. In syllabus point 2 of *Young v. Young*, 194 W.Va. 405, 460 S.E.2d 651 (1995) this Court held: " 'A judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal.' Syllabus Point 21, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966)."

Additionally, the trial judge, in his charge to the jury, explained that the verdict form only allowed them to find the defendant guilty or not guilty of first offense DUI which was different from the indictment. The trial judge told the jury to ignore the other information in the indictment:

> I don't want you to pay much attention to this indictment because it started off with another charge, and now we're down to what we call a lesser included offense, and all you can do is find one of those two against him. Pay no attention to what this indictment says and do not consider what it says in arriving at your verdict in this case.

The Fourth Circuit Court of Appeals recently addressed a similar issue and concluded the following:

> If the indictment contains irrelevant allegations, ordinarily they should be redacted. But where, as here, the jury is unequivocally instructed that the indictment is not evidence, that the indictment is distributed solely as an aid in following the court's instructions and the arguments of counsel, and that certain counts should be disregarded as irrelevant to the defendants currently before the district court, we perceive no reversible error.

*United States v. Polowichak,* 783 F.2d 410, 413 (4th Cir.1986). Likewise, in the case before us, given that the defendant refused to allow the trial judge to redact the indictment and given that the trial judge gave a cautionary instruction, we do not find reversible error.

## IV.

As indicated above, the defendant pled guilty to driving left of center on May 9, 1993, the night of his arrest. On August 26, 1994, the defendant was tried for DUI. The defendant argues that the driving left of center charge, made pursuant to *W. Va. Code,* 17C–7–1 [1951], and the DUI charge, made pursuant to *W. Va. Code,* 17C–5–2 [1986], arose out of the same transaction and therefore, should have been tried together. The third issue on appeal is whether the failure to try the two charges together violates the double jeopardy clauses of the federal and state constitutions.[4] The defendant's argument is best analyzed by breaking it into two parts. The first part focuses on the double jeopardy constitutional provisions. The second part focuses on the procedural joinder rule found in *W. Va. R.Crim. P.* 8(a).

### A.

At the outset, we note that our double jeopardy provision consists of three separate constitutional protections:

> The Double Jeopardy Clause in Article III, Section 5 of the *West Virginia Constitution,* provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense.

Syl. pt. 1, *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977). *See also* syl. pt. 1, *State v. Rummer,* 189 W.Va. 369, 432 S.E.2d 39 (1993); syl. pt. 2, *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992); syl. pt. 3, *State v. Sayre,* 183 W.Va. 376, 395 S.E.2d 799 (1990). The issue in this case is whether the defen-

dant was subjected to a second prosecution for the same offense.

We acknowledge that caselaw has been less than clear on when double jeopardy principles bar multiple prosecutions. *See Gilkerson v. Lilly,* 169 W.Va. 412, 415, 288 S.E.2d 164, 166 (1982) ("If the holdings of this Court on the subject of double jeopardy tend to be confusing, our sense of inadequacy is at least solaced by the total lack of illumination on the subject emanating from the United States Supreme Court." (footnote omitted)). However, we have consistently recognized the following policy behind the prohibition against double jeopardy:

> The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuous state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957). *See Gilkerson,* 169 W.Va. at 415, 288 S.E.2d at 167; *State ex rel. Dowdy v. Robinson,* 163 W.Va. 154, 159, 257 S.E.2d 167, 170 (1979), *overruled on other grounds, State v. Adkins,* 170 W.Va. 46, 289 S.E.2d 720 (1982).

As we will explain below, the most accurate rule on the double jeopardy principle for multiple prosecutions in West Virginia is set forth in syllabus point 8 of *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131 (1983). However, a review of various cases on the double jeopardy issue is necessary to better understand the rule enunciated in *Zaccagnini.*

In syllabus point 1 of *State ex rel. Johnson v. Hamilton,* 164 W.Va. 682, 266 S.E.2d 125 (1980), *cert. denied,* 449 U.S. 1036, 101 S.Ct. 613, 66 L.Ed.2d 498 (1980), we held

---

4. *W. Va. Const.* art. III, § 5 states, in relevant part: "No person shall ... be twice put in jeopardy of life or liberty for the same offence." Similarly, *U.S. Const.* amend. V states, in perti-

nent part, that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]"

that there were two tests which determined whether or not a defendant was entitled to assert a double jeopardy claim:

'In West Virginia the term "same offence" [sic] as used in the double jeopardy provision of *W. Va. Const.*, art. 3, § 5 shall be defined by either the "same evidence test" which provides that offenses are the same unless one offense requires proof of a fact which the other does not, or the "same transaction test" which provides that offenses are the same if they grow out of a single criminal act, occurrence, episode or transaction; therefore, whichever test affords the defendant the greater protection must be applied.' Syl. pt. 1, *State ex rel. Alan Gary Dowdy v. Dan C. Robinson, as Judge, etc.*, [163] W. Va. [154], 257 S.E.2d 167 (1979).

In syllabus point 2 of *Johnson* we further explained that all criminal offenses arising out of the same transaction are to be joined for one trial in order to protect an accused from multiple prosecutions. This Court noted that although the Supreme Court of the United States only uses the "same evidence" test, which was set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), this Court was free to adopt "broader protections under our state constitution than those provided by its federal counterpart." [5] *Dowdy*, 163 W.Va. at 159, 257 S.E.2d at 170.

We subsequently acknowledged "that *Dowdy* and *Johnson* made a primary change in our double jeopardy law[.]" *State ex rel. Watson v. Ferguson*, 166 W.Va. 337, 339, 274 S.E.2d 440, 441 (1980) (footnote omitted).

Indeed, "[w]hile *Dowdy* and *Johnson* set our double jeopardy test as either the 'same evidence' or 'same transaction' test, whichever is more beneficial to the defendant, this rule was adopted without any citation to our prior case law." *Id.* at 349, 274 S.E.2d at 446 (footnote omitted). Although we ultimately found that the formulation in *Dowdy* and *Johnson* was not inconsistent with our prior caselaw, we concluded that the requirement that all offenses arising out of the same transaction are to be joined for one trial was a procedural requirement which was not mandated by the Constitution. *Id.* Thus, in *Watson* we retreated from the two-test analysis set forth in *Dowdy* and *Johnson* without explicitly stating that the "same evidence" test is the only test to be used when analyzing a multiple prosecution double jeopardy issue.

In *Gilkerson, supra*, we revisited *Watson, supra*, and attempted to clarify the issue by holding that "[t]he same transaction test for double jeopardy purposes is a procedural rule that is not mandated by either the State or federal constitutions but is in furtherance of the general policy enunciated in the double jeopardy clauses." Syl. pt. 2, *Gilkerson, supra*. We, therefore, implicitly held that when confronted with a multiple prosecution double jeopardy question the "same evidence" test is the only test which applies. *See State v. Miller*, 175 W.Va. 616, 619, 336 S.E.2d 910, 913 (1985) (In *Gilkerson* "we made it clear that we had abandoned the same transaction test as articulated in [*Dowdy* ] . . . for double jeopardy purposes and

---

**5.** The "same evidence test" in *Blockburger, supra*, is as follows: " '[W]here the same act or transaction constitutes a violation of the two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.' " *Dowdy*, 163 W.Va. at 157, 257 S.E.2d at 169 (*quoting Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309). *See also* syl. pt. 4, *Gill, supra*. In *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the Supreme Court of the United States made clear that the *Blockburger* test applied to double jeopardy multiple prosecution issues. *See Dowdy*, 163 W.Va. at 157, 257 S.E.2d at 169. Our "same evidence" test follows from the *Blockburger* test.

Additionally, we note that this Court has used the *Blockburger* test when determining whether multiple punishments are barred pursuant to the double jeopardy constitutional provisions. *See* syl. pt. 2, *Rummer, supra*; syl. pts. 4 and 6, *Gill, supra*; syl. pt. 8, *State v. Zaccagnini*, 172 W.Va. 491, 308 S.E.2d 131 (1983). In fact, we recently stated that "[u]nder *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), if two statutes contain identical elements of proof, the presumption is that double jeopardy principles have been violated unless there is a clear and definite statement of intent by the Legislature that cumulative punishment is permissible." Syl. pt. 5, *State v. Sears*, 196 W.Va. 71, 468 S.E.2d 324 (1996).

that it existed only as a procedural joinder rule[.]").

▮ To the extent that we have been unclear in *Johnson, Dowdy,* and *Watson* as to whether the *Blockburger* test is the only constitutional test to be applied to a multiple prosecution issue, we now state that our current caselaw is that *Blockburger* is the only test to be used when determining whether multiple prosecutions have violated the double jeopardy constitutional provisions in the state and federal constitutions. The "same transaction" test is a procedural rule now found in *W. Va. R.Crim.P.* 8(a). *See* discussion in part B of this opinion, *infra.*

In this case, the defendant argues that the inquiry does not stop with the *Blockburger* test. In support of his argument, the defendant relies on *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). In *Grady* the defendant, much like our defendant, pled guilty to misdemeanors of driving while intoxicated and failing to keep right of the median. Later the defendant was indicted, *inter alia,* for reckless manslaughter, criminally negligent homicide, and third-degree reckless assault based on the same incident which had given rise to the misdemeanor charges.

The Supreme Court of the United States concluded in *Grady* that because the indictment charges would require proof of the same conduct as the misdemeanor charges, double jeopardy principles prevented the defendant from being indicted on the later charges. In arriving at this conclusion, the Supreme Court of the United States analyzed the double jeopardy issue in two parts. After first applying the *Blockburger* test, it determined whether the "same-conduct" test was satisfied.[6] *Id.* at 510, 110 S.Ct. at 2087, 109 L.Ed.2d at 557. The "same-conduct" test provides that "if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted[,]" a second prosecution may not be had. *Id.*[7] (footnote omitted).

However, as the defendant acknowledges in his amended petition for appeal, the Supreme Court of the United States overruled *Grady* in *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) and stated that the only inquiry in a multiple prosecution double jeopardy issue is whether the test set forth in *Blockburger* has been met. The Supreme Court of the United States recognized that the *Blockburger* analysis "has deep historical roots and has been accepted in numerous precedents of [the Supreme Court of the United States.]" *Id.* at 704, 113 S.Ct. at 2860, 125 L.Ed.2d at 573. *Grady,* on the other hand, "lacks constitutional roots." *Id.* Indeed, the Court stated that "[t]he 'same-conduct' rule [announced in *Grady* ] . . . is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." *Id.* We agree.

Thus, the test to determine whether an accused is being subjected to multiple prosecutions for the same offense is that which was set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). As noted above, this Court essentially adopted the *Blockburger* test in syllabus point 8 of *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131 (1983).[8] "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *See also* syl. pts. 4 and 6, *Gill, supra;* syl. pt. 1, *State v. Miller,* 175 W.Va. 616, 336 S.E.2d 910 (1985).

**6.** One commentator has stated that *Grady* was written because of concern that the *Blockburger* test did not adequately protect defendants from multiple trials. 2 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* II–178 (2d ed. 1993).

**7.** We noted that *Grady, supra,* had restated the double jeopardy law on claims of successive prosecutions in footnote 8 of *Gill,* 187 W.Va. at 143, 416 S.E.2d at 260.

**8.** Syl. pt. 8 of *Zaccagnini, supra,* was used to resolve a *multiple punishment* double jeopardy issue; however, as we have explained above, the language in syl. pt. 8 is equally applicable to a *multiple prosecution* double jeopardy issue.

■ With the above in mind we now turn to the facts in the case before us. Clearly, driving left of center and DUI require proof of different facts:

> The *Blockburger* inquiry need not detain us long. Failing to drive on the right side of the roadway and driving while intoxicated each contain elements that the other does not. The former requires proof of driving on the wrong side of the road which DUI does not necessarily require. An essential element of DUI is proof of being under the influence of alcohol which is an element not required for the summary traffic violation.

*Commonwealth v. Kline*, 405 Pa.Super. 412, 592 A.2d 730, 733 (1991).[9] Accordingly, we find the defendant's argument to be without merit.

### B.

■ We next address whether the failure to bring the charge of driving left of center and the charge of DUI together violates the procedural joinder rule. In syllabus point 1 of *Watson, supra*, this Court outlined the parameters of the procedural joinder rule:

> A defendant shall be charged in the same indictment, in a separate count for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are two or more acts or transactions connected together or constituting parts of a common scheme or plan.

As we have previously explained, in *Watson*, this Court stated that the above rule was a procedural rule and not a constitutional rule. *Id.*, 166 W.Va. at 345, 274 S.E.2d at 444.

Subsequent to *Watson*, this Court adopted *W. Va. R.Crim. P.* 8(a) which also outlines the parameters of the procedural joinder rule, and therefore, supersedes the procedural joinder rule found in syl. pt. 1 of *Watson*. See *Cline v. Murensky*, 174 W.Va. 70, 74, 322

S.E.2d 702, 706 (1984) ("[L]anguage similar to syllabus point 1 of *Watson* appears in Rule 8(a) of [*W. Va. R.Crim. P.*] ..." which took effect on October 11, 1981). *Cf. Reed v. Wimmer*, 195 W.Va. 199, 205, 465 S.E.2d 199, 205 (1995) (After holding that under the rules of evidence no common law remains, this Court stated: "[T]o the extent that our prior cases have carved out *per se* exclusionary rules that have not been codified in the West Virginia Rules of Evidence, their precedential value has been reduced to a 'source of guidance' only; and, to the extent our prior cases are inconsistent or incompatible with the West Virginia Rules of Evidence, they have been implicitly overruled by Rule 402." (footnote omitted)). *W. Va. R.Crim. P.* 8(a) states:

> *Joinder of offenses.*—Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character. *All offenses based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan shall be charged in the same indictment or information in a separate count for each offense, whether felonies or misdemeanors or both.*

(emphasis added).

■ Although this Court recognizes a "procedural joinder rule," we have stated that there are qualifications to this rule. *Cline*, 174 W.Va. at 73, 322 S.E.2d at 706. One such qualification is that "offenses which are unknown to the prosecuting attorney or not committed within the same county are not subject to this joinder rule." *Watson*, 166 W.Va. at 345 n. 13, 274 S.E.2d at 444 n. 13.

In *Cline, supra*, this Court was directly confronted with the issue of whether charges

---

9. After applying the *Blockburger* analysis in *Kline, supra*, the Superior Court of Pennsylvania applied the "same-conduct" analysis set forth in *Grady, supra* and concluded that although the guilty plea to driving on the wrong side of the roadway did not bar the subsequent DUI charge under the *Blockburger* analysis, it did bar the DUI charge under the "same-conduct" analysis set forth in *Grady, supra*. However, because we decline to adopt the "same-conduct" analysis set forth in *Grady*, we decline to follow the Superior Court of Pennsylvania's ultimate conclusion in *Kline, supra*.

which are unknown to the prosecuting attorney are subject to the procedural joinder rule. The defendants, in *Cline*, were arrested following an altercation on a charge of brandishing a weapon. On the day of their arrest the defendants pled guilty and paid fines upon the misdemeanor offense of brandishing a weapon. Subsequently, a misdemeanor indictment was returned charging the defendants with carrying a weapon without a license. The defendants argued that because the charges of brandishing a weapon and carrying a weapon without a license arose out of the same criminal transaction, double jeopardy principles prohibited the prosecutor from later prosecuting them for carrying a weapon without a license.

This Court disagreed:

Where in magistrate court a petitioner was charged with and entered a plea of guilty to the misdemeanor offense of brandishing a weapon, *W. Va. Code*, 61–7–10 [1925], the State was not precluded from subsequently seeking an indictment and prosecuting that petitioner for the misdemeanor offense of carrying a weapon without a license, *W. Va. Code*, 61–7–1 [1975], where, although those two offenses arose from the same criminal transaction, the plea of guilty to brandishing a weapon was taken in magistrate court shortly after the offenses were committed, and prior to the taking of that plea, the prosecuting attorney had no knowledge of or opportunity to attend that magistrate court proceeding.

Syl. pt. 2, *Cline, supra.*

■ Likewise, in the case before us, the defendant pled guilty to driving left of center on the night of his arrest. Moreover, the arresting officer testified in a suppression hearing that the criminal complaint regarding the DUI charge did not include the driving left of center violation. Thus, the prosecutor, in the case before us, would not have had knowledge of or the opportunity to attend the magistrate court proceeding involving the driving left of center violation. We conclude, therefore, that the State was not precluded by the procedural joinder rule from subsequently prosecuting the defendant for first offense DUI.

■ To hold otherwise would allow defendants to enter a guilty plea to minor charges on the night of their arrest in order to prevent the prosecutor from bringing more serious charges once the prosecutor learns of the criminal transaction. As one court has noted: "[The statutory joinder rule] is intended to prevent harassment by the prosecution; it is not intended to afford a defendant with a procedural expedient to avoid a prosecution." *Commonwealth v. Bartley*, 262 Pa.Super. 390, 396 A.2d 810, 813 (1979) (footnote omitted).[10] Accordingly, we conclude that the defendant's argument is without merit.[11]

---

**10.** The State notes that the American Bar Association's standards for Criminal Justice under Standard 13–2.3(d) states: "Entry of a plea of guilty or nolo contendere to one offense does not bar the subsequent prosecution of any additional offense based upon the same conduct or same criminal episode." ABA, *Standards on Criminal Justice*, Stnd. 13–2.3(d) (2d ed. 1980). This standard addresses "the concern that defendants might rush to plead to minor offenses that have been filed before investigation and evaluation of greater companion offenses have been completed. Thus, the standard removes any possibility that the defendant can 'sandbag' the prosecution through a quick plea." *Id.* at Stnd. 13–2.3(d) Commentary. The Commentary goes on to state that Standard 13–2.3(d) does not prohibit plea bargain agreements which forgo subsequent prosecution as part of the plea bargain. *Id.*

**11.** The defendant also argues that the circuit court erred in refusing to grant the defendant's motion to dismiss the DUI charge on the grounds that the defendant was denied the right to counsel on the night he was arrested in violation of article III, section fourteen of the *West Virginia Constitution* and the Sixth Amendment of the *Constitution of the United States.* Although the defendant requested counsel before the secondary breath test was given, the arresting officer stated that he informed the defendant that he could not contact his counsel until after the defendant took the secondary breath test. The defendant refused to submit to the secondary breath test. The defendant maintains that because of his request, he had a right to counsel before deciding whether to submit to a required breath test.

The trial judge agreed that the defendant's right to counsel was violated when the officer *refused to allow him to contact* a lawyer before submitting the defendant to the secondary breath test. Thus, the trial judge prohibited the prosecution from introducing evidence at trial concerning the defendant's refusal to submit to the secondary breath test.

588

## V.

Based on the above, we affirm the defendant's conviction.

Affirmed.

Although the State argues that the defendant had no right to counsel before deciding whether to submit to a breath test, the State maintains that the trial judge properly remedied any violation of the defendant's right to counsel which may have occurred. We agree that the trial judge properly remedied a violation, if any, of the defendant's right to counsel which may have occurred. *See United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981)

(When the prosecution has obtained incriminating evidence in violation of a defendant's Sixth Amendment right to counsel, the remedy is not to dismiss the indictment, but to suppress the evidence). Therefore, because the defendant has failed to show that the trial judge improperly remedied a violation, if any, we decline to address whether the right to counsel attaches before an accused is required to submit to a breathalyzer test.