## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

November 21, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0264** (Kanawha County 13-F-739)

**Delbert Wileman,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Delbert Wileman, by counsel Matthew A. Victor, appeals the judgment and sentencing order of the Circuit Court of Kanawha County, entered February 19, 2014, subsequent to his conviction after a trial by a jury of thirty-nine counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust; one count of sexual assault in the second degree; and one count of distribution and display to a minor of obscene matter. Respondent State of West Virginia appears by counsel Derek A. Knopp.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted in the September of 2013 term of court in the Circuit Court of Kanawha County on forty counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust in violation of West Virginia Code § 61-8D-5;[1] one count of distribution and

---

[1] West Virginia Code § 61-8D-5 provides in part:

(a) In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of or other person in a position of trust in relation to a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian, custodian or person in a position of trust shall be guilty of a felony and, upon conviction

1

display to a minor of obscene matter in violation of West Virginia Code § 61-8A-2;[2] and one count of sexual assault in the second degree in violation of West Virginia Code § 61-8B-4.[3] At the conclusion of a jury trial conducted in January of 2014, petitioner was convicted of each of those counts, except one count of sexual abuse by a parent, guardian, custodian, or person in a position of trust. He was sentenced to serve an indeterminate term of 95 to 185 years in the West Virginia Penitentiary. Petitioner appealed.

On appeal, petitioner asserts five assignments of error: (1) that there was insufficient evidence to convict the petitioner of the crimes charged in the indictment, the proof at trial was at variance with the charges contained in the indictment, and the State failed to establish the statutory elements of "child" and "minor" as required by statute; (2) that the trial court admitted into evidence unduly prejudicial sexually-graphic material; (3) that the trial court erred in refusing to allow petitioner to use West Virginia Department of Health and Human Resources ("DHHR") records for impeachment purposes or to refresh victims' recollection; (4) that the trial court improperly excluded exculpatory DNA evidence; and (5) that cumulative error deprived petitioner of his due process right to a fair trial.

---

thereof, shall be imprisoned in a correctional facility not less than ten nor more than twenty years, or fined not less than $500 nor more than $5,000 and imprisoned in a correctional facility not less than ten years nor more than twenty years. . . .

[2] West Virginia Code § 61-8A-2 provides in part:

(a) Any adult, with knowledge of the character of the matter, who knowingly and intentionally distributes, offers to distribute, or displays to a minor any obscene matter, is guilty of a felony and, upon conviction thereof, shall be fined not more than twenty-five thousand dollars, or confined in a state correctional facility for not more than five years, or both. . . .

[3] West Virginia Code § 61-8B-4 provides:

(a) A person is guilty of sexual assault in the second degree when:

(1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion; or

(2) Such person engages in sexual intercourse or sexual intrusion with another person who is physically helpless.

(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than ten nor more than twenty-five years, or fined not less than one thousand dollars nor more than ten thousand dollars and imprisoned in the penitentiary not less than ten nor more than twenty-five years.

We begin with petitioner's first assignment of error, in which he essentially attacks the sufficiency of the evidence to support his conviction.[4] In reviewing a defendant's challenge to the sufficiency of the evidence to convict, we have stated:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 1, *State v. Juntilla*, 227 W.Va. 492, 711 S.E.2d 562 (2011). We also have stated:

> "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not

---

[4] Though petitioner also states in the first assignment of error that "the proof at trial was at variance with the charges contained in the [i]ndictment[,]" petitioner does not elaborate on this assertion. We have held:

> "If the proof adduced at trial differs from the allegations in an indictment, it must be determined whether the difference is a variance or an actual or a constructive amendment to the indictment. If the defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced, then the difference between the proof adduced at trial and the indictment is a variance which does not usurp the traditional safeguards of the grand jury. However, if the defendant is misled, is subjected to an added burden of proof, or is otherwise prejudiced, the difference between the proof at trial and the indictment is an actual or a constructive amendment of the indictment which is reversible error." Syllabus Point 3, *State v. Johnson*, 197 W.Va. 575, 476 S.E.2d 522 (1996).

Syl. Pt. 6, *State v. Corra*, 223 W.Va. 573, 678 S.E.2d 306 (2009). Not every variation between an indictment and proof at trial creates reversible error, and it is only when a defendant is prejudiced by a variance that a reversal is required. *Id.*. at 580, 678 S.E.2d at 313. For the reasons stated in the body of this decision, we find no actual variance between the crimes described in the indictment and the evidence offered at trial, and no prejudice. We therefore find no reversible error in this ground.

an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 2, *State v. McFarland*, 228 W.Va. 492, 721 S.E.2d 62 (2011).

At trial, victim C.G., now age nineteen, testified that petitioner—referred to as her "pawpaw" because of a former relationship between petitioner and the mother of C.G.'s foster mother—used a sexual implement on her when she was approximately twelve or thirteen years old on about ten occasions, and another sexual implement on her on approximately twenty occasions. She identified the specific objects used from items seized from petitioner's residence by law enforcement officers. She also testified that petitioner made her watch pornographic videos, and she identified specific videos taken from petitioner's residence. C.G. testified that petitioner put his mouth on her vagina on more than fifty occasions, and put her mouth on his penis on more than twenty occasions. She specifically described these incidents. She also described an incident wherein petitioner had intercourse with her when she was fourteen years old. C.G. testified that this abuse was ongoing until she was seventeen years old. C.G.'s "sister" S.C., now also age nineteen, testified that petitioner first abused her when she was in the sixth grade, through digital penetration.[5] S.C. testified that he put his mouth on her vagina on one occasion, used sexual objects on her several times, and placed her mouth on his penis three to five times. This testimony is more than sufficient to establish thirty-nine occurrences of sexual abuse by a parent, guardian, custodian, or other person in a position of trust; one occurrence of distribution and display to a minor of obscene material; and one occurrence of sexual assault in the second degree.[6]

---

[5] The women are not biological sisters. C.G. testified that she was adopted by petitioner's long-time girlfriend, and was "passed down" to that girlfriend's daughter Annette when the girlfriend died in 2009. Sometime thereafter, because of a dispute with Annette, C.G. began to live with petitioner. Annette is S.C.'s biological mother. S.C. never lived with petitioner, but she sometimes stayed at his home, particularly on occasions when her mother had no food, electricity, or water.

[6] In arguing that the evidence was not sufficient to support his conviction, petitioner argues that the State "never proved each victim was a 'child'" for the purposes of the crimes charged, suggesting that the State is burdened with proving that the victims, who were approximately twelve and fourteen years old when the sexual abuse began, were not "emancipated" minors within the meaning of West Virginia Code § 49-7-27. That code section provides that "[a] child over the age of sixteen may petition a court to be declared emancipated. . . . A child over the age of sixteen years who marries shall be emancipated by operation of law." C.G. and S.C. each were under the age of sixteen when the sexual abuse began. There is no evidence that either had previously petitioned the court to be declared emancipated or that either had married, though either of these possibilities could have been explored on cross-examination. In any event, there is no evidence or suggestion that either victim was married to petitioner, and

Petitioner attempts to discredit this evidence, first, by highlighting the lack of forensic evidence presented at trial. This Court has held that "'[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury.' Syllabus Point 5, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981)." *Coleman v. Painter*, 215 W. Va. 592, 598-99, 600 S.E.2d 304, 310-11 (2004). Second, he attacks the character of C.G. and S.C., arguing that the women "had numerous reasons to fabricate damaging evidence" and suggesting that they had "apparently severe mental health issues . . . tended to lie, were out of control, defiant, thieving, and bent on enjoying adult life in the form of boyfriends, without any discipline or structure." Petitioner had the opportunity to present evidence of his accusations at trial, and there is no evidence that the jury did not weigh it appropriately. See Syl. Pt. 2, *State v. Smith*, 225 W.Va. 706, 696 S.E.2d 8, *cert. denied*, ⸺ U.S. ⸺, 131 S.Ct. 579, 178 L.Ed.2d 422 (2010) ("'In the trial of a criminal prosecution, where guilt or innocence depends on conflicting evidence, the weight and credibility of the testimony of any witness is for jury determination.' Syllabus Point 1, *State v. Harlow*, 137 W.Va. 251, 71 S.E.2d 330 (1952)."). On appeal, the Court "must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution." Syl. Pt. 1, in part, *State v. Guthrie*, 194 W.Va. 657, 663, 461 S.E.2d 163, 169 (1995). Consequently, after viewing the evidence in the light most favorable to State, the Court concludes that the jury was presented with sufficient evidence to find petitioner guilty of the crimes charged beyond a reasonable doubt. *Id.*, Syl. Pt 1, in part.

Petitioner's second assignment of error charges that several items seized from his residence and subsequently introduced into evidence prejudicially depict him as "perverted and demented" in violation of Rules 402[7], 403[8], and 404(a)[9] of the West Virginia Rules of Evidence.

---

we are loath to accept the proposition that the purpose behind the emancipation statute is to subject a minor to legal sexual abuse by an individual to whom that minor is not married.

[7] Rule 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible."

[8] Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[9] Rule 404(a) provides, in part:

(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion, except:

(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same. . . .

In addition to the sexual toys and pornography described in the testimony of C.G., petitioner takes special exception to a book entitled "Three Hot Granddaughters," a fictional work about incest, parts of which were read into evidence by an investigating officer.[10] Petitioner objected to the admission of that book at the appropriate time. This Court has established that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998). *Accord* Syl. Pt. 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983) ("'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, [171] W.Va. [639] [643] 301 S.E.2d 596, 599 (1983).").

Neither party has argued that petitioner requested pretrial notice about this evidence, or that the State gave notice pursuant to Rule 404(b) of the West Virginia Rules of Evidence that it would introduce any of the evidence discussed in relation to this assignment of error for the purpose of proving "lustful disposition[.]"[11] *See State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990).[12] However, petitioner does not argue that the circuit court failed to conduct a hearing, pursuant to *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994) prior to the admission of the evidence and it is apparent from the parties' minimal citations to the record on appeal that the court gave ample consideration to the items specifically addressed in petitioner's brief. We therefore understand petitioner's argument to attack the court's determination regarding the weight of the evidence, rather than the integrity of the process.

Petitioner's argument asserting that prejudicial evidence was improperly admitted is general in nature and not supported by specific citations to the record on appeal. He argues that the State "was able to present to the jury evidence of . . . [p]etitioner's character by introducing the evidence of pornography, sexual aids, magazines, VHS [cassettes] and DVDs. . . ." A party's brief must contain an argument exhibiting clearly the points of fact and law presented, the

---

[10] Petitioner broadly objects to the reference of many items recovered from his home, identifying some of the pornographic materials by their very graphic titles. However, he has not provided a categorized list of the material he finds objectionable.

[11] Petitioner asserts that the State moved to introduce excerpts from "Three Hot Granddaughters" at trial, prior to jury selection.

[12] Rule 404(b) provides that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." We have held that "Rule 404(b) of the West Virginia Rules of Evidence requires the prosecution in a criminal case to disclose evidence of other crimes, wrongs or acts prior to trial if such disclosure has been requested by the accused; however, upon reasonable notice such evidence may be disclosed for the first time during trial upon a showing of good cause for failure to provide the requested pretrial notice." *State v. Mongold,* 220 W.Va. 259, 266, 647 S.E.2d 539, 546 (2007).

standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal. *See* Rule 10(c)(7)West Virginia Rules of Appellate Procedure. We find the requisite citations for specific evidence lacking such that we are unable to consider the probative value of this evidence or its prejudicial effect.[13] In any event, to the extent that victim C.G. identified specific items recovered by officers as the same items used by petitioner in inflicting abuse on her, this evidence was highly probative. We find no error on this ground.

We next turn to petitioner's third assignment of error, in which he argues that the circuit court erred in refusing to allow petitioner to use West Virginia Department of Health and Human Resources ("DHHR") records for impeachment purposes or to refresh victims' recollection. According to petitioner, he was in possession of DHHR records reflecting S.C.'s report that C.G. had made false allegations of molestation against C.G.'s mother's boyfriend, and he planned to elicit testimony from S.C. and C.G.'s mother stating that they believed those allegations to be false. As we noted in our analysis of the prior issue, a trial court's rulings are subject to an abuse of discretion standard. Syl. Pt. 2, *Payne*, 225 W.Va. at 604, 694 S.E.2d at 937; Syl. Pt. 4, *Rodoussakis*, 204 W.Va. at 61, 511 S.E.2d at 472. In his argument, petitioner cites to the pretrial discussion of this matter contained in the appendix record on appeal in support of his argument that "the trial court refused to allow [p]etitioner to use the DHHR records. . . ." In that portion of the transcript, the court ruled, "[U]nless these people were there, how would they know whether it happened or not? So, we'll . . . listen. Before those two witnesses testify, we'll have a hearing outside the jury on those two—on that issue." Petitioner does not, however, call our attention to any point in the transcript where refreshed recollection or impeachment became necessary, or where he was denied the opportunity to use the DHHR documents for either purpose. Again, our rules do not contemplate that our attention be dedicated to non-specific arguments. *See* Rule 10(c)(7) West Virginia Rules of Appellate Procedure. Thus, inasmuch as there is no evidence of a ruling prejudicing petitioner, we find no error on this ground.

Next, we consider petitioner's fourth assignment of error, that the trial court improperly excluded "exculpatory" DNA evidence. Petitioner sought to introduce State Police records showing the presence of DNA of other male donors on several sexual objects retrieved from petitioner's residence pursuant to the search warrant. The motion was denied after the State argued that the implication that C.G. had used the objects with other males would be a violation

---

[13] We note an exception insofar as petitioner argued in sufficient detail about the admission of the "Three Hot Granddaughters" book. However, petitioner noted that a number of other titles suggesting certain predilections were "unabashedly presented to the jury by the prosecutor in the State's opening statement," including "Give Me Some P***y for Gramps[,]" "Two Grandpas, One Hot Girl[,]" "Watch Grandpa Get a Taste of Some Young Tight P***y[,]" and "Grandpa F***s Like a Young Stud[.]" In light of the unopposed reference at trial to these several graphic titles, together with C.G.'s testimony about the specific other items, we find that any error in the admission of "Three Hot Granddaughters" is harmless.

7

of our rape shield statute.[14] Petitioner argues on appeal that the presence of DNA on the subject toys from individuals other than petitioner and C.G. is "substantial exculpatory evidence" and therefore outside the purview of rape shield.

Again, we note that a trial court's rulings are subject to an abuse of discretion standard. Syl. Pt. 2, *Payne*, 225 W.Va. at 604, 694 S.E.2d at 937; Syl. Pt. 4, *Rodoussakis*, 204 W.Va. at 61, 511 S.E.2d at 472. In reviewing this particular claim, Syllabus Point 6 of *State v. Guthrie*, 205 W. Va. 326, 518 S.E.2d 83 (1999), further directs our evaluation:

> The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense. Under this test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion.

*Id*. at 330, 518 S.E.2d at 87.

Petitioner's argument is centered on five separate items—four phallic devices and a small massage tool—tested for the presence of DNA and shown to host DNA of unidentified male individuals.[15] Petitioner was permitted to elicit testimony that his DNA was excluded from at least one of the items, but he sought to introduce the evidence to "maintain his position that another male, but not . . . [p]etitioner, used these items with C.G., and, therefore, not only was she sexually assaulted by another individual . . . but also that her testimony concerning [p]etitioner's use of 'sex toys' upon C.G. was simply false." Petitioner maintains that this is exculpatory evidence, which we specifically exclude from rape shield protection according to

---

[14] West Virginia's Rape Shield Law, West Virginia Code § 61–8B–11(b), provides:

> In any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, That such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his or her previous sexual conduct an issue in the trial by introducing evidence with respect thereto.

[15] There is no dispute that petitioner was the owner of the items tested. The appendix record on appeal contains the forensic laboratory report of the DNA testing, and petitioner quotes the report, which describes the various methods of testing conducted, as well as the results from multiple swabs, in technical terms. No proffer of testimony explaining the results was made at trial. The parties agree that the results are sometimes inconclusive as to both petitioner and C.G., that petitioner was excluded as a possible donor from one item, and that DNA from multiple donors (including several males) was identified from the samples. S.C. appears to have been excluded as a contributor from all samples.

*State v. Calloway*, 207 W.Va. 43, 528 S.E.2d 490 (1999). We disagree. Exculpatory evidence is evidence that tends to establish a defendant's innocence. Black's Law Dictionary 637 (9th ed. 2009). As the circuit court adequately stated, "Just because there's more than one person's DNA on it doesn't mean anything." Under the test we set forth in syllabus point six of *Guthrie*, we do not disturb the ruling of the circuit court. First, the DNA evidence that may have suggested that C.G. (or, for that matter, petitioner) had multiple sexual partners was not relevant to the determination of whether petitioner engaged in illegal sexual behavior with the victim. Second, the probative value of the DNA evidence was outweighed by the high risk of unfair prejudice to the State, especially in light of the lack of probative value to the crimes charged. Third, the State's interests in excluding DNA evidence suggesting C.G. had multiple sexual partners far outweighed petitioner's interest in introducing it, because the State had a concern in protecting our rape shield law. We find no error in the exclusion of this evidence.

Finally, petitioner contends that he is entitled to a new trial as a result of the cumulative error by the circuit court. "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syl. Pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972). Because we have found no substantial error by the circuit court with respect to any of petitioner's preceding assignments of error, we must reject his claim of cumulative error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 21, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

9